**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

_____

LOOP HQ, INC.,                    CIVIL NUMBER:

    Plaintiff,                    2:25-CV-12562(JKS)

    v.                            HEARING

JEREMIAH CHURCH, AND TRES
COMMA COMPLIANCE INC.,

    Defendants.
_____


    MARTIN LUTHER KING BUILDING & U.S. COURTHOUSE
    50 WALNUT STREET, NEWARK, NEW JERSEY 07101
    TUESDAY, JULY 15, 2025
    COMMENCING AT 3 P.M.

B E F O R E:              THE HONORABLE JAMEL K. SEMPER,
                      UNITED STATES DISTRICT JUDGE,

A P P E A R A N C E S:


    MURPHY ORLANDO LLC
    BY:  JASON F. ORLANDO, ESQUIRE
    BY:  DEBRA R. RYDAROWSKI, ESQUIRE
    BY:  MALLORY OLWIG, ESQUIRE
    494 BOARD STREET, 5TH FLOOR
    NEWARK, NEW JERSEY 07102
    FOR THE PLAINTIFF

_____

    Laurie A. Engemann, Official Court Reporter
        Laurie_Engemann@NJD.UScourts.gov
           (973) 776-7714

    **Proceedings recorded stenographically.**
  **Transcript produced by computer-aided transcription.**

1   **A P P E A R A N C E S:** – CONTINUED

2

3

          COLE SCHOTZ P.C.
4         BY:  RACHEL A. MONGIELLO, ESQUIRE
          25 MAIN STREET,
5         HACKENSACK, NEW JERSEY 07601
          For the DEFENDANTS

6

7

8

9   **A L S O   P R E S E N T:**

10      GREGORY FRAGIN, CEO OF LOOP HQ., INC.,

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              (PROCEEDINGS HELD IN OPEN COURT BEFORE

 2                THE HONORABLE JAMEL K. SEMPER,

 3            UNITED STATES DISTRICT JUDGE, AT 3 P.M.)

 4          THE COURT:  We are here in the matter of

 5   Loop HQ, Inc. v. Jeremiah Church and Tres Comma Compliance

 6   Inc. this is civil action 25-12562.  This is a hearing for a

 7   preliminary injunction.

 8          I will take the appearances of counsel, starting with

 9   plaintiff.

10          MR. ORLANDO:  How are you doing, Your Honor.  Jason

11   Orlando from the law firm Murphy Orlando on behalf the

12   plaintiff, Loop HQ.  I'm joined by Debra Rydarowski also from

13   Murphy Orlando as well as Mr. Gregory Fragin, who is the CEO

14   of Loop.

15          THE COURT:  Who is going to be arguing?

16          MR. ORLANDO:  I will be arguing, Your Honor.

17          THE COURT:  Okay.

18          MR. ORLANDO:  And also we have Mallory Olwig from

19   Murphy Orlando, attorney; and our paralegal, Jess Rakowski.

20          THE COURT:  Next time we'll give you guys more seats.

21          Counsel.

22          MS. MONGIELLO:  Good afternoon, your Honor, Rachel

23   Mongiello, from Cole Schotz on behalf of the defendants

24   Jeremiah Church and Tres Comma Compliance.

25          THE COURT:  Counsel for plaintiff, if you could just
```

1    come to the lectern so we can have a discussion.

2              MR. ORLANDO:  Okay.  Let me just take my materials

3    with me, Your Honor.

4              (Brief pause.)

5              THE COURT:  I've read your papers.  In the event that

6    you are in the middle of your remarks and I ask a question,

7    please just give me an opportunity to ask a question.  I will

8    let you circle back.

9              My first question that I wanted to pose to you is:

10   Can you define for me in succinct terms what the trade secret

11   here is?

12             MR. ORLANDO:  Yes, Your Honor.

13             The trade secret is the product that Loop, the

14   plaintiff --

15             THE COURT:  The compliance product?

16             MR. ORLANDO:  Right, the compliance product and how

17   it was formulated, everything that goes into it, Your Honor.

18   The trade secret is, you know, not just, I know the defendants

19   had said, Well, it is all open source code.

20             It is not just that, Your Honor.  It is how that open

21   source code is put together, the algorithms that are used in

22   order to achieve the goal of the product, which is to

23   differentiate personal contact communications verse business

24   contact communications.

25             This product was developed to deal with an issue,

1  particularly in the financial field, where the SEC and FINRA

2  require that communications be archived that are business

3  communications.  As we have all experienced communications has

4  gone beyond the past where it was letters and then email and

5  faxes, now it includes direct messages, social media

6  communications.

7          THE COURT:  So to boil it down, the trade secret is

8  an algorithm.  Correct?

9          MR. ORLANDO:  The trade secret is the algorithm and

10  also how the product is put together in order to accomplish

11  its goals.

12          The way I think of it, Your Honor, and I'm not

13  necessarily a tech person and Mr. Fragin, I can consult with

14  him to get more specifics if Your Honor would like it.  But

15  the way I think of it is, like, the ultimate trade secret, the

16  quintessential, the platonic trade secret, is the formula of

17  Coke Cola.  The formula of Coke Cola is made -- Coke Cola is

18  made from products, I mean since they removed cocaine from it,

19  that is publicly available.

20          Anybody can buy the ingredients that are in Coke.

21  How those ingredients are assembled and put together, that is

22  the trade secret.

23          And the same thing here.  Even if the product, even

24  if Mr. Church built the product from open source material, how

25  those materials were put together and the algorithms that are

 1    used in order to accomplish the end goal of differentiating

 2    personal and business contacts for archiving purposes is what

 3    the trade secret is.

 4             And Mr. Church --

 5             THE COURT:  Is this product currently in the market?

 6             MR. ORLANDO:  It is in the process of being marketed.

 7    Correct?

 8             THE COURT:  So, as we sit here today, is it being

 9    sold to customers and are customers paying for this product?

10    Is it currently active by customers?

11             MR. ORLANDO:  My understanding is that it is active.

12    Correct?  Greg?

13             MR. FRAGIN:  We have customers that we, that were

14    using the product, that paid for the product.  And then based

15    upon the feedback we actually stopped signing up new customers

16    in order to make certain improvements.  We have now started

17    onboarding new customers.

18             THE COURT:  Okay.  So when you say -- and I'd prefer,

19    counsel, if you answered my questions.

20             MR. ORLANDO:  Okay.

21             THE COURT:  If you need an opportunity to talk with

22    him, I will give that to you.

23             MR. ORLANDO:  Okay.  Sure.

24             THE COURT:  So, right now the product is operable and

25    people are paying for this product, is that your position?

1          MR. ORLANDO:  That is my understanding from my

2   client.  Yes, Your Honor.

3          THE COURT:  Okay.  And since you filed suit here or

4   filed this TRO, what is -- do you have an idea of what losses

5   Loop has suffered as a result of the alleged acts of TCC?

6          MR. ORLANDO:  Your Honor, in terms of the exact

7   monetary damages, we can't put a number on that.  It is

8   unquantifiable.  I think the case law says that itself.  We

9   cited in our papers, Your Honor.

10         And also, you know, I know we make a lot of it,

11  particularly in our reply, of the June 26, 2024 message from

12  Mr. Church, who is the CTO and a shareholder of Loop.  And he

13  was the only employee, Your Honor --

14         THE COURT:  When he talked essentially about beating

15  the competitors to the punch and the market not having a lot

16  of competitors, something to that affect?

17         MR. ORLANDO:  Yes.  And he actually says here,

18         (Reading.) Pricing is an afterthought.  The last

19         three months of sales calls have been unbelievable.

20         Every single time we get on a phone call with people

21         we've never spoken with and show them what Loop can do

22         for compliance the next part of the conversation is

23         always, quote, what are the next steps?  Unquote.

24         THE COURT:  I read that part.  My focus -- I really

25  want to drill down on the immediate irreparable harm here.

1          MR. ORLANDO:  Okay.

2          THE COURT:  Since you filed this TRO, can you outline

3    or define for me what you believe is the immediate irreparable

4    harm Loop is suffering as a result of Mr. Church and TCC going

5    forward with their business?

6          MR. ORLANDO:  Yes, Your Honor.

7          Already Loop has -- people are aware that Mr. Church

8    has started this competitor.  Again, he was the only employee.

9    He was the CTO.  As he mentioned in his letter he was doing

10   sales calls.

11         All of those folks where Loop was being marketed,

12   particularly to investors as a first mover, are now expressing

13   some reticence in providing additional revenues and funding

14   for Loop as it tries to raise money, which is essential for a

15   start up.  It is the life blood of the company.  Without the

16   ability to attract new investment, they are not going to be

17   able to finish their product to get it to the market.

18         THE COURT:  So you are saying the inability to

19   attract investment is one or is that the primary immediate

20   irreparable harm or one of them?

21         MR. ORLANDO:  That certainly is one of them.  I think

22   that --

23         THE COURT:  What is the next one?

24         MR. ORLANDO:  The other irreparable harms are to its

25   ability to have a competitor.  It was the first mover in this

1   space or it is attempting to become the first mover in its

2   space.  Now it has its CTO, its CTO, chief technology officer

3   of a technology start up, the only employee, building a

4   product, Tres Comma Compliance, that's doing exactly the same

5   thing.

6           THE COURT:  Prior to this, the formation of TCC and

7   then going up, were you aware of any other competitors to

8   Loop?

9           MR. ORLANDO:  No, Your Honor.  Not in doing what --

10          THE COURT:  Just to drill down, were you aware of any

11  other competitors or anyone that did anything that had a

12  product, a compliance product, where people are able to search

13  their different platforms in order to comply with this

14  regulation?  Was there any other competitor that you are aware

15  of that was in existence?

16          MR. ORLANDO:  No.  Not doing what Loop is doing,

17  Your Honor.  And, again, I'll direct you to June 26, 2024

18  letter where Mr. Church himself says that.  He says --

19          THE COURT:  I read it.  I wanted to see if something

20  had changed between when he said that in '24 and when you guys

21  filed this temporary restraining order, your injunction here,

22  that is what I was curious about.

23          Can you talk to me about what safeguards Loop had in

24  place to protect these algorithms and the structure of this

25  product?

```
 1        MR. ORLANDO:  Yes, Your Honor.  Loop had in place
 2   double authentication, it had a security white paper.  And
 3   again, part of the reason we put in Mr. Fragin's certification
 4   that accompanied our reply or declaration that accompanied our
 5   reply is to show that Mr. Fragin himself is an attorney,
 6   worked at Weil Gotshal, graduate of Columbia Law School,
 7   Columbia Business School, has been involved in the hedge fund
 8   business over $200 million of investments.
 9        Peter Cavilone is the general counsel, and they knew
10   that this was important.  And they put it in.
11        They have also had at least two security audits.  One
12   that we are expecting the results from soon.  So, they did
13   everything they could to protect their product in terms of, in
14   terms of its development and getting it out to market.
15        THE COURT:  Anything else, counsel?
16        MR. ORLANDO:  Let me just double check if there is
17   anything else I might have missed.
18        THE COURT:  Sure.
19        MR. ORLANDO:  I think, Your Honor, you had asked, you
20   had begun this conversation asking about the definition of
21   trade secrets.  I would direct Your Honor to paragraph 57 of
22   the complaint.  We discuss it there as well as the
23   certification of Zev Spilman, where he talks about the
24   specific algorithms that are the trade secret.
25        In terms of the irreparable harm also the potential
```

1    to lose customers.  And I believe there is case law --

2            THE COURT:  How many, just so I'm clear, how many

3    customers, ballpark, I know it is fluid, but how many

4    customers does Loop have for this particular product today?

5            You can go aside and talk to him.  You don't have to

6    say it in open court.

7            And, specifically, I would like to know how many

8    customers you have for this today, and if you can tell me, how

9    many customers you had or lost since you filed this

10   preliminary injunction.

11           MR. ORLANDO:  Your Honor, Loop currently has four

12   proof of concept customers.  And there are 13 other customers

13   that are sort of waiting to see how it has been rolled out.

14   They have not lost any specific customers since we filed

15   the --

16           THE COURT:  No customers lost.

17           MR. ORLANDO:  -- order to show cause within the last

18   week.

19           THE COURT:  When you say "proof of concept customer,"

20   what is that?

21           MR. ORLANDO:  Proof of concept customer is -- let me

22   get clarification on it.  I don't want to mislead the court.

23           THE COURT:  Okay.

24           (Brief pause.)

25           MR. ORLANDO:  So proof of concept is, it is being

```
 1   rolled out to certain -- certain customers have purchased the

 2   product and it is rolled out, it is being rolled out to

 3   employees gradually over time as they see how it works --

 4           THE COURT:  Employees of those customers or?

 5           MR. ORLANDO:  Yes.

 6           THE COURT:  I see.

 7           So it is not quite fully up and running.  It is being

 8   refined as the clients are using it or the client is not even

 9   using it yet?

10           MR. ORLANDO:  I think the clients are using it.  It

11   is being, it is in the business sphere.  It is just in the

12   process of being, you know, sort of test driven, as the way,

13   at least it comes through my brain, by the customers as they

14   decide whether or not to fully adopt the product.

15           THE COURT:  So these are essentially samples, if you

16   will, for lack of a better term, when you say "test driven."

17   The clients are sampling them, the four clients that you --

18           MR. ORLANDO:  As I imagine it through my lens as a

19   lawyer it would be like if you were switching from West Law to

20   Lexis or a completely new search engine, you might not go

21   whole hog right away.  You might take baby steps to make sure

22   that you like the product and that it works and accomplishes

23   your needs and goals.

24           THE COURT:  I see.  So would that be akin to like a

25   soft opening?  I went to a sub shop the other day, they called
```

1  it a soft opening.  Is that what we are talking about here

2  with your product, sir?

3          MR. ORLANDO:  Yes.  It seems like it would be.  Yes.

4          THE COURT:  Okay.  So that is the four people.  And

5  then the 13 people are what?  Well, the 13 entities.

6          MR. ORLANDO:  Right.

7          THE COURT:  I assume four companies, you mean

8  entities.  What do the 13 represent?  Have they bought a

9  product or they are saying they might buy a product?

10          You can go to him.

11          (Brief pause.)

12          MR. ORLANDO:  The 13 are companies that were marketed

13  to in the summer of 2024.  After Mr. Church left, they had

14  paused in terms of marketing and soliciting new customers

15  until they found his replacement.

16          THE COURT:  So they have been marketed to, but they

17  haven't said, Hey, I'm going to buy Loop's product, and I'm on

18  board?  They are differently situated than the four entities

19  you discussed, right?  They are not a part of this soft

20  opening?

21          MR. ORLANDO:  Correct.

22          THE COURT:  They are maybe people who might have

23  received a brochure and are considering whether they are

24  coming to get a sample.

25          MR. ORLANDO:  Right.  Exactly.  And they are kind of

1  customers that, having a competitor like Mr. Church compete in

2  violation of what we believe is a very clear noncompete, would

3  obviously harm Loop.

4        THE COURT:  Counsel, I don't want to hide the ball.

5  I have concerns as to whether or not the record as it is, as

6  you've helped establish for me today or augment lends itself

7  to the presence of immediate irreparable harm.  We are talking

8  about four people with a soft opening.

9        The product is being defined, not even what it will

10  eventually be.  The 13 people have spent, they haven't even

11  bought the product yet.  They, by your words or by the words

12  that were agreed to, my words, but that were agreed to, like

13  they've simply gotten brochures and made a commitment to maybe

14  consider this product; have they not?

15        MR. ORLANDO:  Correct, but, Your Honor, again, the

16  main impetus to be here is the noncompete.  And Mr. Church

17  himself in the noncompete recognize it would be irreparable

18  harm for him to breach it.  Which he has done.

19        THE COURT:  Theoretically, let's just assume that

20  there is a violation of the noncompete.  All right.  I will

21  build that into the scenario.  Aren't there avenues to deal

22  with breaches of contract that don't require the extraordinary

23  relief that this rule that you are asking for calls for.

24        MR. ORLANDO:  No, Your Honor.  Not in this situation.

25  Not when Mr. Church signed an employment agreement

1    acknowledging that Loop would be entitled to injunctive relief

2    if it was breached.  He signed that.  That is paragraph 11.

3         THE COURT:  I read it.

4         MR. ORLANDO:  It is very clear.  And the case law

5    also said, Your Honor, and we cited in our brief, if you just

6    bear with me.

7         THE COURT:  Sure.

8         MR. ORLANDO:  We cite to -- irreparable harm in the

9    context of TROs, and we cite to *Pappan Enterprise v. Hardee's*

10   *Food System*, 143 F.3d 800 Third Circuit 1998.  Implicit when

11   violation of a noncompete occurs as unlawful competition can

12   lead to lost business opportunities and goodwill resulting in

13   injury to the employer that does not lend itself to a straight

14   forward calculation of money damages.  Again, that is

15   Third Circuit.

16        Also we cite for that proposition, *ADP LLC v. Olsen*,

17   District of New Jersey, October 28, 2020.

18        THE COURT:  I read those cases, counsel.  I

19   understand why you are raising them.  I guess even in those

20   cases the court saw what I thought was more of a firmer

21   finding that there was a greater risk of potential harm than

22   we have here.

23        But let me hear from your opposition.  Thank you,

24   counsel.  I appreciate it.

25        MR. ORLANDO:  Okay.

1          THE COURT:  Counsel, why don't you deal straight up

2     with that issue that he left off with.  We have a potential

3     breach of this contract.  Counsel is saying that.  I told him

4     I assume it was true.

5          Let's assume that it is true, that it is a breach of

6     this employment contract.  Why shouldn't they get immediate

7     relief pursuant to this rule just based on that.

8          MS. MONGIELLO:  Yes, Your Honor.

9          As you pointed out, one of the most difficult things

10    here is that they don't really have an established customer

11    base.  These are proof of concept customers.

12         Basically, they are using it on a trial basis.  And

13    my client has been clear that he is staying as far away from

14    any existing customers or customers that were pitched to.

15         I think there has been a bit of difficulty for Loop

16    in articulating exactly what harm they are going to suffer.

17    They mentioned that they investors don't like to see that

18    Mr. Church is operating this other business.

19         And I think that part of the problem for them,

20    Your Honor, is that they are still representing on their

21    marketing materials, including the one they attached as

22    Exhibit A to Mr. Spilman's certification that Church is still

23    associated with them.  So I can understand why it would be

24    concerning to their investors.  He is also still listed on

25    their compliance website.

1          THE COURT:  He is an investor, is he not?  Didn't he

2     put in the $10,000 or something like that?

3          MS. MONGIELLO:  Yes, Your Honor, but they are listing

4     him as the lead developer.  He is not listed as an investor,

5     your Honor, no.  They are representing that he is the

6     developer backbone of this product.  And he is not associated

7     with this product anymore.

8          In terms of the fact that the contract memorializes

9     the right to injunctive relief, the cases are clear that that

10    doesn't prevent the court from still searching for irreparable

11    harm under the facts.

12         THE COURT:  Thank you, counsel.  I have heard enough.

13         MS. MONGIELLO:  From me altogether?

14         THE COURT:  Yes.  It is not that I don't enjoy

15    speaking with you.

16         Anything else, counsel?

17         MR. ORLANDO:  Yes, Your Honor, if I may.  In terms of

18    the four customers, these are large institutions.  It is not

19    just that they are four.  They are hundreds of billions of

20    dollars of assets of these four customers.

21         THE COURT:  I refer to them as "entities."

22         MR. ORLANDO:  Yes.

23         THE COURT:  I get that you are talking about more

24    than one person.

25         MR. ORLANDO:  Yes.

1          THE COURT:  Thank you.

2          I just want to deal with what the legal standard is

3  here first.  Injunctive relief is an extraordinary remedy and

4  should be granted only in limited circumstances.  That flows

5  from *Kos Pharmaceuticals Inc., v. Andrx Corp.*, 369 F.3D 700,

6  708, Third Circuit.  The court may grant injunction only if a

7  party shows:

8          One, The likelihood of success on the merits.

9          Two, That it will suffer irreparable harm if the

10  injunction is denied.

11          Three, The granting of preliminary relief will not

12  result in an even greater harm to the nonmoving party; and

13          Four, That the public interest favors such relief.

14          This was also articulated in *Arrowpoint Capital Corp.*

15  *v. Arrowpoint Asset Management, LLC.,* 793 F.3D 313, 318,

16  Third Circuit 2015.

17          I'm going to deny this application because I don't

18  believe plaintiff established the likelihood of success on the

19  merits and did not sufficiently show that it will suffer

20  irreparable harm absent injunctive relieve.  The plaintiff has

21  failed to establish the likelihood of success on the merits

22  based on the record that I read before coming here and what we

23  have put forward on the record today of its trade secret

24  claims because it is not clear to the court the specific

25  algorithms, how they are set up, their unique nature, whether

1  or not, what steps were meant to protect them.

2        And also, what is also troubling to the court it is

3  not clear the immediate irreparable harm that the plaintiff is

4  likely to suffer if I do not grant relief.  It seems as though

5  this market is emerging.  It is certainly fluid.  It doesn't

6  seem as though there had been a significant loss of interest,

7  loss of clients, loss of things that I think are tangible

8  enough that would warrant an immediate irreparable harm as the

9  case law has established.

10        These open and contested questions make it impossible

11  for the court to make a finding that there has been enough to

12  establish this extraordinary remedy that the parties are

13  seeking; and so for that reason the application is denied.

14        I will put my ruling in a more fulsome order for the

15  parties at some point later on this week.

16        We are off the record.  Thank you.

17        MR. ORLANDO:  One last thing, we did request also

18  expedited discovery given that we do believe that --

19        THE COURT:  At this juncture, counsel, those requests

20  will be denied.  If at some point the record changes and you

21  want to put something new before the court, I will certainly

22  entertain that.

23        What I have before me now, I don't think that there

24  is a sufficient basis to grant that request.  But the doors to

25  the courtroom are not closed.  Come back if something changes.

1        MR. ORLANDO:  Okay.

2        Thank you, Your Honor.

3        THE COURT:  Thank you all.

4        THE COURTROOM DEPUTY:  All rise.

5

6        (The proceedings are concluded at 3:26 p.m.)

7

8                    *        *        *

9

10       **FEDERAL OFFICIAL COURT REPORTER'S CERTIFICATE**

11

12       **I, Laurie A. Engemann, CCR, CRCR, RPR,** Official Court

13  Reporter of the United States District Court for the District

14  of New Jersey, do hereby certify that the foregoing is a

15  correct transcript from the record of proceedings in the

16  above-entitled matter.

17

18

19

20  */S/ Laurie A. Engemann CCR, CRCR, RPR*          *JULY 16, 2025*

21  *Signature of Official Court Reporter          Date*

22

23

24

25

## $

**$10,000** [1] - 16:23
**$200** [1] - 10:5

## '

**'24** [1] - 9:17

## 0

**07101** [1] - 1:10
**07102** [1] - 1:7
**07601** [1] - 2:5

## 1

**11** [1] - 14:24
**13** [6] - 11:9, 13:2, 13:5, 13:9, 14:7
**143** [1] - 15:7
**15** [1] - 1:11
**1998** [1] - 15:7

## 2

**2015** [1] - 18:12
**2020** [1] - 15:14
**2024** [3] - 7:8, 9:14, 13:10
**2025** [1] - 1:11
**25** [1] - 2:4
**25-12562** [1] - 3:6
**26** [2] - 7:8, 9:14
**28** [1] - 15:14
**2:25-CV-12562(JKS** [1] - 1:5

## 3

**3** [2] - 1:11, 3:3
**313** [1] - 18:11
**318** [1] - 18:11
**369** [1] - 18:1
**3:26** [1] - 19:25

## 4

**494** [1] - 1:18

## 5

**50** [1] - 1:10
**57** [1] - 10:18
**5TH** [1] - 1:18

## 7

**700** [1] - 18:1
**708** [1] - 18:2
**776-7714** [1] - 1:24

## 793 [1] - 18:11

## 8

**800** [1] - 15:7

## 9

**973** [1] - 1:24

## A

**A** [10] - 1:15, 1:23, 2:1, 2:4, 2:9, 16:18
**a** [50] - 3:6, 3:25, 4:4, 4:5, 5:10, 7:2, 7:4, 7:7, 7:9, 7:12, 7:17, 8:1, 8:9, 8:11, 8:22, 8:25, 9:8, 9:9, 9:24, 12:13, 12:15, 12:17, 12:21, 12:22, 12:23, 13:5, 13:6, 13:16, 13:20, 13:21, 13:23, 13:24, 14:5, 14:10, 14:17, 15:8, 15:10, 15:17, 15:18, 15:24, 16:2, 16:8, 16:11, 18:2, 19:2, 19:7, 19:10, 19:20
**ability** [2] - 8:13, 8:22
**able** [2] - 8:14, 9:9
**about** [8] - 7:11, 9:19, 9:20, 10:17, 10:20, 12:23, 14:5, 17:19
**absent** [1] - 18:16
**accompanied** [1] - 10:1
**accomplish** [2] - 5:7, 5:23
**accomplishes** [1] - 12:19
**achieve** [1] - 4:19
**acknowledging** [1] - 14:23
**action** [1] - 3:6
**active** [2] - 6:7, 6:8
**acts** [1] - 7:2
**actually** [2] - 6:12, 7:14
**additional** [1] - 8:10
**adopt** [1] - 12:11
**ADP** [1] - 15:13
**affect** [1] - 7:13
**after** [1] - 13:10
**afternoon** [1] - 3:21
**afterthought** [1] - 7:15
**again** [5] - 8:5, 9:14, 9:25, 14:12, 15:11
**agreed** [2] - 14:9
**agreement** [1] - 14:22
**aided** [1] - 1:25

**akin** [1] - 12:21
**algorithm** [2] - 5:5, 5:6
**algorithms** [5] - 4:19, 5:22, 9:21, 10:21, 18:21
**all** [6] - 4:17, 4:25, 8:8, 14:17, 19:23, 19:24
**alleged** [1] - 7:2
**already** [1] - 8:4
**also** [13] - 3:11, 3:17, 5:7, 7:7, 10:8, 10:22, 15:2, 15:13, 16:20, 18:10, 18:23, 19:13
**altogether** [1] - 17:9
**always** [1] - 7:20
**an** [14] - 4:5, 4:22, 5:5, 6:18, 7:1, 7:15, 10:2, 14:22, 16:6, 16:22, 16:25, 17:24, 18:8, 19:4
**And** [1] - 7:9
**and** [69] - 3:5, 3:17, 3:18, 3:23, 4:4, 4:14, 4:23, 5:1, 5:6, 5:9, 5:10, 5:18, 5:20, 5:22, 5:24, 6:1, 6:6, 6:11, 6:15, 6:21, 6:25, 7:7, 7:9, 7:12, 7:14, 7:18, 8:1, 8:10, 9:3, 9:14, 9:17, 9:21, 9:24, 10:6, 10:7, 10:11, 10:23, 11:2, 11:4, 11:5, 11:9, 11:24, 12:4, 12:19, 12:20, 13:1, 13:11, 13:14, 13:20, 13:22, 14:10, 14:13, 15:1, 15:2, 15:6, 15:9, 16:8, 16:15, 17:2, 17:24, 18:8, 18:15, 18:18, 18:23, 19:6, 19:9, 19:16
**AND** [1] - 1:7
**Andrx** [1] - 18:1
**answered** [1] - 6:16
**any** [5] - 9:4, 9:7, 9:11, 11:11, 16:9
**anybody** [1] - 5:17
**anymore** [1] - 17:3
**anyone** [1] - 9:8
**anything** [4] - 9:8, 10:12, 10:14, 17:12
**appearances** [1] - 3:7
**application** [2] - 18:13, 19:9
**appreciate** [1] - 15:21
**archived** [1] - 4:24
**archiving** [1] - 5:24
**are** [56] - 3:4, 3:9, 4:4, 4:19, 4:24, 5:17,

5:18, 5:22, 6:6, 6:22, 7:20, 8:4, 8:9, 8:13, 8:15, 8:21, 9:9, 9:11, 10:9, 10:21, 11:9, 11:10, 12:5, 12:7, 12:12, 12:14, 12:23, 13:2, 13:6, 13:9, 13:15, 13:16, 13:19, 13:20, 13:22, 14:4, 14:20, 15:16, 16:7, 16:8, 16:12, 16:16, 16:24, 17:1, 17:5, 17:14, 17:15, 17:19, 18:21, 19:3, 19:8, 19:12, 19:21, 19:25
**aren't** [1] - 14:18
**arguing** [2] - 3:14, 3:15
**Arrowpoint** [2] - 18:10, 18:11
**articulated** [1] - 18:10
**articulating** [1] - 16:12
**as** [30] - 3:12, 4:25, 6:5, 7:2, 8:1, 8:6, 8:9, 8:11, 10:19, 11:25, 12:5, 12:9, 12:10, 12:15, 14:2, 15:8, 16:5, 16:9, 16:17, 16:25, 17:17, 18:25, 19:2, 19:4
**aside** [1] - 11:2
**ask** [2] - 4:4, 4:5
**asked** [1] - 10:16
**asking** [2] - 10:17, 14:20
**assembled** [1] - 5:18
**Asset** [1] - 18:11
**assets** [1] - 17:16
**associated** [2] - 16:19, 17:2
**assume** [4] - 13:4, 14:16, 16:1
**AT** [2] - 1:11, 3:3
**attached** [1] - 16:17
**attempting** [1] - 8:23
**attorney** [2] - 3:18, 10:2
**attract** [2] - 8:13, 8:16
**audits** [1] - 10:8
**augment** [1] - 14:3
**authentication** [1] - 9:24
**available** [1] - 5:16
**avenues** [1] - 14:18
**aware** [4] - 8:4, 9:4, 9:7, 9:11
**away** [2] - 12:18, 16:9

## B

**baby** [1] - 12:18
**backbone** [1] - 17:2
**ball** [1] - 14:1
**ballpark** [1] - 10:25
**base** [1] - 16:7
**based** [3] - 6:11, 16:3, 18:18
**basically** [1] - 16:7
**basis** [2] - 16:8, 19:20
**be** [14] - 3:14, 3:15, 4:24, 8:13, 12:16, 12:21, 12:25, 14:7, 14:13, 14:14, 14:23, 16:19, 17:25, 19:16
**bear** [1] - 15:3
**beating** [1] - 7:11
**because** [2] - 18:13, 18:20
**become** [1] - 8:23
**BEFORE** [1] - 3:1
**before** [3] - 4:18, 18:18, 19:17, 19:19
**begun** [1] - 10:17
**behalf** [2] - 3:10, 3:22
**being** [9] - 6:3, 6:5, 8:8, 11:22, 11:24, 12:4, 12:8, 12:9, 14:6
**believe** [5] - 7:25, 10:23, 13:24, 18:14, 19:14
**better** [1] - 12:13
**between** [1] - 9:17
**beyond** [1] - 5:1
**billions** [1] - 17:15
**bit** [1] - 16:11
**blood** [1] - 8:12
**BOARD** [1] - 1:18
**board** [1] - 13:15
**boil** [1] - 5:4
**bought** [2] - 13:5, 14:8
**brain** [1] - 12:10
**breach** [3] - 14:15, 15:25, 16:2
**breached** [1] - 14:24
**breaches** [1] - 14:19
**brief** [1] - 15:2
**Brief** [2] - 11:21, 13:8
**brochure** [1] - 13:20
**brochures** [1] - 14:10
**build** [1] - 14:18
**building** [1] - 8:25
**BUILDING** [1] - 1:10
**built** [1] - 5:21
**business** [8] - 4:21, 4:24, 5:24, 8:2, 10:5, 12:8, 15:9, 16:14
**Business** [1] - 10:4

**buy** *[3]* - 5:17, 13:6, 13:14
**BY** *[4]* - 1:17, 1:17, 1:18, 2:4

## C

**calculation** *[1]* - 15:11
**call** *[1]* - 7:17
**called** *[1]* - 12:22
**calls** *[3]* - 7:16, 8:7, 14:20
**can** *[12]* - 3:25, 4:8, 5:10, 5:17, 7:18, 7:24, 9:20, 11:2, 11:5, 13:7, 15:8, 16:19
**can't** *[1]* - 7:4
**Capital** *[1]* - 18:10
**case** *[4]* - 7:5, 10:23, 15:1, 19:5
**cases** *[3]* - 15:15, 15:17, 17:5
**cause** *[1]* - 11:14
**Cavilone** *[1]* - 10:6
**CEO** *[2]* - 2:10, 3:12
**certain** *[3]* - 6:13, 11:23
**certainly** *[3]* - 8:18, 19:1, 19:17
**certification** *[3]* - 9:25, 10:20, 16:18
**changed** *[1]* - 9:17
**changes** *[2]* - 19:16, 19:21
**check** *[1]* - 10:13
**chief** *[1]* - 8:24
**church** *[11]* - 5:21, 6:1, 7:9, 8:1, 8:4, 9:15, 13:10, 13:23, 14:13, 14:22, 16:14
**CHURCH** *[1]* - 1:7
**Church** *[3]* - 3:5, 3:23, 16:18
**circle** *[1]* - 4:6
**Circuit** *[4]* - 15:7, 15:12, 18:2, 18:12
**circumstances** *[1]* - 17:25
**cite** *[3]* - 15:5, 15:6, 15:13
**cited** *[2]* - 7:6, 15:2
**civil** *[1]* - 3:6
**CIVIL** *[1]* - 1:4
**claims** *[1]* - 18:20
**clarification** *[1]* - 11:19
**clear** *[7]* - 10:24, 13:24, 15:1, 16:8, 17:5, 18:20, 18:24

**client** *[3]* - 6:24, 12:5, 16:8
**clients** *[5]* - 12:5, 12:7, 12:14, 19:3
**closed** *[1]* - 19:21
**cocaine** *[1]* - 5:15
**code** *[2]* - 4:17, 4:18
**Coke** *[4]* - 5:14, 5:17
**Cola** *[1]* - 5:14
**Cole** *[1]* - 3:22
**COLE** *[1]* - 2:3
**Columbia** *[2]* - 10:3, 10:4
**come** *[2]* - 3:25, 19:21
**comes** *[1]* - 12:10
**coming** *[2]* - 13:21, 18:18
**COMMA** *[1]* - 1:7
**Comma** *[3]* - 3:5, 3:23, 9:1
**COMMENCING** *[1]* - 1:11
**commitment** *[1]* - 14:10
**communications** *[6]* - 4:21, 4:24, 4:25, 5:3
**companies** *[2]* - 13:4, 13:9
**company** *[1]* - 8:12
**compete** *[1]* - 13:23
**competition** *[1]* - 15:8
**competitor** *[4]* - 8:5, 8:22, 9:11, 13:23
**competitors** *[4]* - 7:12, 7:13, 9:4, 9:8
**complaint** *[1]* - 10:19
**completely** *[1]* - 12:17
**compliance** *[5]* - 4:13, 4:14, 7:19, 9:9, 16:21
**COMPLIANCE** *[1]* - 1:7
**Compliance** *[3]* - 3:5, 3:23, 9:1
**comply** *[1]* - 9:10
**computer** *[1]* - 1:25
**computer-aided** *[1]* - 1:25
**concept** *[5]* - 11:9, 11:16, 11:18, 11:22, 16:7
**concerning** *[1]* - 16:20
**concerns** *[1]* - 14:2
**concluded** *[1]* - 19:25
**consider** *[1]* - 14:11
**considering** *[1]* - 13:20
**consult** *[1]* - 5:10
**contact** *[2]* - 4:21
**contacts** *[1]* - 5:24

**contested** *[1]* - 19:6
**context** *[1]* - 15:6
**CONTINUED** *[1]* - 2:1
**contract** *[4]* - 14:19, 15:25, 16:2, 17:4
**conversation** *[2]* - 7:19, 10:17
**Corp** *[2]* - 18:1, 18:10
**correct** *[5]* - 5:5, 6:4, 6:9, 13:18, 14:12
**could** *[2]* - 3:24, 10:10
**counsel** *[14]* - 3:8, 3:20, 3:24, 6:16, 10:6, 10:12, 14:1, 15:15, 15:21, 15:23, 15:25, 17:8, 17:12, 19:15
**court** *[9]* - 11:3, 11:19, 15:17, 17:6, 18:2, 18:20, 18:23, 19:7, 19:17
**COURT** *[52]* - 1:1, 3:1, 3:4, 3:14, 3:16, 3:19, 3:24, 4:3, 4:13, 5:4, 6:2, 6:5, 6:15, 6:18, 6:21, 6:25, 7:11, 7:21, 7:24, 8:15, 8:20, 9:3, 9:7, 9:16, 10:12, 10:15, 10:24, 11:13, 11:16, 11:20, 12:1, 12:3, 12:12, 12:21, 13:1, 13:4, 13:13, 13:19, 14:1, 14:16, 14:25, 15:4, 15:15, 15:23, 16:22, 17:8, 17:10, 17:17, 17:19, 17:22, 19:15, 19:23
**Court** *[1]* - 1:23
**COURTHOUSE** *[1]* - 1:10
**courtroom** *[1]* - 19:21
**COURTROOM** *[1]* - 19:24
**CTO** *[4]* - 7:9, 8:6, 8:24
**curious** *[1]* - 9:19
**currently** *[3]* - 6:2, 6:7, 11:8
**customer** *[3]* - 11:16, 11:18, 16:6
**customers** *[25]* - 6:6, 6:7, 6:10, 6:12, 6:14, 10:23, 10:25, 11:1, 11:5, 11:6, 11:9, 11:11, 11:13, 11:23, 12:1, 12:10, 13:11, 13:23, 16:7, 16:9, 16:10, 17:14, 17:16

## D

**damages** *[2]* - 7:4, 15:11
**deal** *[4]* - 4:22, 14:18, 15:23, 17:23
**DEBRA** *[1]* - 1:17
**Debra** *[1]* - 3:11
**decide** *[1]* - 12:11
**declaration** *[1]* - 10:1
**Defendants** *[1]* - 1:8
**defendants** *[2]* - 3:22, 4:16
**DEFENDANTS** *[1]* - 2:5
**define** *[2]* - 4:8, 7:25
**defined** *[1]* - 14:6
**definition** *[1]* - 10:17
**denied** *[3]* - 18:6, 19:9, 19:16
**deny** *[1]* - 18:13
**DEPUTY** *[1]* - 19:24
**developed** *[1]* - 4:22
**developer** *[2]* - 16:25, 17:2
**development** *[1]* - 10:11
**different** *[1]* - 9:10
**differentiate** *[1]* - 4:20
**differentiating** *[1]* - 5:23
**differently** *[1]* - 13:15
**difficult** *[1]* - 16:5
**difficulty** *[1]* - 16:11
**direct** *[3]* - 5:2, 9:14, 10:18
**discovery** *[1]* - 19:14
**discuss** *[1]* - 10:19
**discussed** *[1]* - 13:16
**discussion** *[1]* - 3:25
**DISTRICT** *[4]* - 1:1, 1:1, 1:13, 3:3
**District** *[1]* - 15:14
**dollars** *[1]* - 17:16
**done** *[1]* - 14:15
**doors** *[1]* - 19:20
**double** *[2]* - 9:24, 10:13
**down** *[3]* - 5:4, 7:22, 9:7
**drill** *[2]* - 7:22, 9:7
**driven** *[2]* - 12:9, 12:13

## E

**email** *[1]* - 5:1
**emerging** *[1]* - 19:1
**employee** *[3]* - 7:10, 8:5, 8:25

**employees** *[2]* - 11:25, 12:1
**employer** *[1]* - 15:10
**employment** *[2]* - 14:22, 16:2
**end** *[1]* - 5:23
**Engemann** *[1]* - 1:23
**engine** *[1]* - 12:17
**enjoy** *[1]* - 17:10
**enough** *[3]* - 17:8, 19:4, 19:7
**Enterprise** *[1]* - 15:6
**entertain** *[1]* - 19:18
**entities** *[4]* - 13:2, 13:5, 13:15, 17:17
**entitled** *[1]* - 14:23
**ESQUIRE** *[4]* - 1:17, 1:17, 1:18, 2:4
**essential** *[1]* - 8:11
**essentially** *[2]* - 7:11, 12:12
**establish** *[3]* - 14:3, 18:17, 19:8
**established** *[3]* - 16:6, 18:14, 19:5
**even** *[7]* - 5:20, 12:5, 14:6, 14:7, 15:16, 18:8
**event** *[1]* - 4:3
**eventually** *[1]* - 14:7
**every** *[1]* - 7:17
**everything** *[2]* - 4:15, 10:10
**exact** *[1]* - 7:3
**exactly** *[3]* - 9:1, 13:22, 16:12
**Exhibit** *[1]* - 16:18
**existence** *[1]* - 9:12
**existing** *[1]* - 16:9
**expecting** *[1]* - 10:9
**expedited** *[1]* - 19:14
**experienced** *[1]* - 4:25
**expressing** *[1]* - 8:9
**extraordinary** *[1]* - 14:19, 17:24, 19:8

## F

**F.3D** *[2]* - 18:1, 18:11
**F.3d** *[1]* - 15:7
**fact** *[1]* - 17:4
**facts** *[1]* - 17:7
**failed** *[1]* - 18:17
**far** *[1]* - 16:9
**favors** *[1]* - 18:9
**faxes** *[1]* - 5:2
**feedback** *[1]* - 6:12
**field** *[1]* - 4:23
**filed** *[6]* - 6:25, 7:1, 7:24, 9:18, 11:6,

11:11
**financial** [1] - 4:23
**finding** [2] - 15:18, 19:7
**finish** [1] - 8:14
**FINRA** [1] - 4:23
**firm** [1] - 3:10
**firmer** [1] - 15:17
**first** [5] - 4:7, 8:9, 8:22, 8:23, 17:24
**FLOOR** [1] - 11:18
**flows** [1] - 17:25
**fluid** [2] - 15:20, 19:1
**focus** [1] - 7:21
**folks** [1] - 8:8
**Food** [1] - 15:7
**FOR** [2] - 1:1, 1:19
**formation** [1] - 9:3
**formula** [2] - 5:13, 5:14
**formulated** [1] - 4:15
**forward** [3] - 8:2, 15:11, 18:19
**found** [1] - 13:12
**Four** [1] - 18:9
**four** [9] - 11:8, 12:14, 13:1, 13:4, 13:15, 14:5, 17:14, 17:15, 17:16
**FRAGIN** [2] - 2:10, 6:10
**Fragin** [3] - 3:12, 5:10, 10:2
**Fragin's** [1] - 9:25
**from** [16] - 3:10, 3:11, 3:17, 3:22, 5:15, 5:21, 6:23, 7:8, 10:9, 12:16, 15:20, 16:9, 17:6, 17:9, 18:1
**fully** [2] - 12:4, 12:11
**fulsome** [1] - 19:10
**fund** [1] - 10:4
**funding** [1] - 8:10

### G

**general** [1] - 10:6
**get** [7] - 5:11, 7:17, 8:14, 11:19, 13:21, 16:2, 17:19
**getting** [1] - 10:11
**give** [3] - 3:19, 4:5, 6:19
**given** [1] - 19:14
**goal** [2] - 4:20, 5:23
**goals** [2] - 5:8, 12:20
**goodwill** [1] - 15:9
**Gotshal** [1] - 10:3
**gotten** [1] - 14:10
**gradually** [1] - 11:25

**graduate** [1] - 10:3
**grant** [3] - 18:2, 18:25, 19:20
**granted** [1] - 17:25
**granting** [1] - 18:7
**greater** [2] - 15:18, 18:8
**Greg** [1] - 6:9
**GREGORY** [1] - 2:10
**Gregory** [1] - 3:12
**guess** [1] - 15:16
**guys** [2] - 3:19, 9:17

### H

**HACKENSACK** [1] - 2:5
**Hardee's** [1] - 15:6
**harm** [16] - 7:22, 8:1, 8:17, 10:22, 13:25, 14:4, 14:15, 15:5, 15:18, 16:12, 17:7, 18:5, 18:8, 18:16, 18:24, 19:4
**harms** [1] - 8:21
**hear** [1] - 15:20
**heard** [1] - 17:8
**hearing** [1] - 3:6
**HEARING** [1] - 1:6
**hedge** [1] - 10:4
**HELD** [1] - 3:1
**helped** [1] - 14:3
**hide** [1] - 14:1
**himself** [3] - 9:15, 10:2, 14:14
**hog** [1] - 12:18
**Honor** [29] - 3:9, 3:15, 3:21, 4:2, 4:10, 4:15, 4:18, 5:9, 5:11, 6:24, 7:3, 7:6, 7:10, 8:3, 9:6, 9:14, 9:23, 10:16, 10:18, 11:8, 14:12, 14:21, 15:2, 16:4, 16:16, 16:24, 17:1, 17:13, 19:22
**HONORABLE** [2] - 1:13, 3:2
**HQ** [4] - 1:4, 2:10, 3:5, 3:11
**hundreds** [1] - 17:15

### I

**idea** [1] - 7:1
**imagine** [1] - 12:15
**immediate** [7] - 7:22, 7:25, 8:16, 14:4, 16:3, 18:24, 19:4
**impetus** [1] - 14:13
**implicit** [1] - 15:7

**important** [1] - 10:7
**impossible** [1] - 19:6
**improvements** [1] - 6:13
**IN** [1] - 3:1
**inability** [1] - 8:15
**Inc** [3] - 3:5, 3:6, 18:1
**INC** [3] - 1:4, 1:7, 2:10
**includes** [1] - 5:2
**including** [1] - 16:17
**index** [1] - 20:1
**ingredients** [2] - 5:17, 5:18
**injunction** [5] - 3:7, 9:18, 11:7, 18:2, 18:6
**injunctive** [4] - 14:23, 17:5, 17:24, 18:16
**injury** [1] - 15:10
**institutions** [1] - 17:14
**interest** [2] - 18:9, 19:2
**investment** [2] - 8:13, 8:16
**investments** [1] - 10:5
**investor** [2] - 16:22, 16:25
**investors** [3] - 8:9, 16:13, 16:20
**involved** [1] - 10:4
**irreparable** [13] - 7:22, 7:25, 8:17, 8:21, 10:22, 14:4, 14:14, 15:5, 17:6, 18:5, 18:16, 18:24, 19:4
**issue** [2] - 4:22, 15:24
**itself** [3] - 7:5, 14:3, 15:10

### J

**JAMEL** [2] - 1:13, 3:2
**Jason** [1] - 3:9
**JASON** [1] - 1:17
**Jeremiah** [2] - 3:5, 3:23
**JEREMIAH** [1] - 1:7
**Jersey** [1] - 15:14
**JERSEY** [4] - 1:1, 1:10, 1:19, 3:2
**Jess** [1] - 3:18
**joined** [1] - 3:11
**JUDGE** [2] - 1:13, 3:3
**JULY** [1] - 1:11
**juncture** [1] - 19:15
**June** [2] - 7:8, 9:14

### K

**kind** [1] - 13:22

**KING** [1] - 1:10
**Kos** [1] - 18:1

### L

**lack** [1] - 12:13
**large** [1] - 17:14
**last** [3] - 7:15, 11:14, 19:13
**later** [1] - 19:11
**Laurie** [1] - 1:23
**Laurie_Engemann@
NJD.UScourts.gov**
[1] - 1:23
**Law** [2] - 10:3, 12:16
**law** [5] - 3:10, 7:5, 10:23, 15:1, 19:5
**lawyer** [1] - 12:16
**lead** [2] - 15:9, 16:25
**least** [2] - 10:8, 12:10
**lectern** [1] - 3:25
**left** [2] - 13:10, 15:24
**legal** [1] - 17:23
**lend** [1] - 15:10
**lends** [1] - 14:3
**lens** [1] - 12:15
**letter** [2] - 8:6, 9:15
**letters** [1] - 5:1
**Lexis** [1] - 12:17
**life** [1] - 8:12
**like** [11] - 5:11, 5:12, 11:4, 12:16, 12:19, 12:21, 12:25, 13:23, 14:9, 16:13, 16:23
**likelihood** [3] - 18:4, 18:14, 18:17
**likely** [1] - 18:25
**limited** [1] - 17:25
**listed** [2] - 16:20, 16:25
**listing** [1] - 16:24
**LLC** [3] - 1:16, 15:13, 18:11
**Loop** [20] - 3:5, 3:11, 3:13, 4:11, 7:2, 7:9, 7:18, 8:1, 8:4, 8:8, 8:11, 9:5, 9:13, 9:20, 9:23, 11:1, 11:8, 13:25, 14:23, 16:11
**LOOP** [2] - 1:4, 2:10
**Loop's** [1] - 13:14
**lose** [1] - 10:23
**loss** [2] - 19:2, 19:3
**losses** [1] - 7:1
**lost** [4] - 11:6, 11:11, 11:13, 15:9
**LUTHER** [1] - 1:10

### M

**made** [3] - 5:14, 5:15, 14:10
**MAIN** [1] - 2:4
**main** [1] - 14:13
**make** [5] - 6:13, 7:7, 12:18, 19:6, 19:7
**Mallory** [1] - 3:17
**MALLORY** [1] - 1:18
**Management** [1] - 18:11
**many** [5] - 10:24, 10:25, 11:4, 11:6
**market** [5] - 6:2, 7:12, 8:14, 10:11, 19:1
**marketed** [4] - 6:3, 8:8, 13:9, 13:13
**marketing** [2] - 13:11, 16:17
**MARTIN** [1] - 1:10
**material** [1] - 5:21
**materials** [3] - 4:1, 5:22, 16:17
**matter** [1] - 3:4
**may** [2] - 17:13, 18:2
**maybe** [2] - 13:19, 14:10
**mean** [2] - 5:15, 13:4
**meant** [1] - 18:22
**media** [1] - 5:2
**memorializes** [1] - 17:4
**mentioned** [2] - 8:6, 16:13
**merits** [3] - 18:4, 18:15, 18:17
**message** [1] - 7:8
**messages** [1] - 5:2
**middle** [1] - 4:4
**might** [5] - 10:14, 12:17, 12:18, 13:6, 13:19
**million** [1] - 10:5
**mislead** [1] - 11:19
**missed** [1] - 10:14
**monetary** [1] - 7:4
**money** [2] - 8:11, 15:11
**MONGIELLO** [5] - 2:4, 3:21, 16:4, 16:24, 17:9
**Mongiello** [1] - 3:22
**months** [1] - 7:16
**most** [1] - 16:5
**mover** [3] - 8:9, 8:22, 8:23
**MR** [46] - 3:9, 3:15, 3:17, 4:1, 4:10, 4:14, 5:6, 6:3, 6:8, 6:10,

*6:17, 6:20, 6:23, 7:3, 7:14, 7:23, 8:3, 8:18, 8:21, 9:6, 9:13, 9:23, 10:13, 10:16, 11:8, 11:14, 11:18, 11:22, 12:2, 12:7, 12:15, 12:25, 13:3, 13:9, 13:18, 13:22, 14:12, 14:21, 15:1, 15:5, 15:22, 17:13, 17:18, 17:21, 19:13, 19:22*

**MS** *[4] - 3:21, 16:4, 16:24, 17:9*

**MURPHY** *[1] - 1:16*

**Murphy** *[3] - 3:10, 3:12, 3:18*

### N

**N** *[3] - 1:15, 2:1, 2:9*

**nature** *[1] - 18:21*

**necessarily** *[1] - 5:10*

**need** *[1] - 6:18*

**needs** *[1] - 12:20*

**never** *[1] - 7:18*

**New** *[1] - 15:14*

**NEW** *[4] - 1:1, 1:10, 1:19, 2:5*

**new** *[6] - 6:12, 6:14, 8:13, 12:17, 13:11, 19:17*

**NEWARK** *[2] - 1:10, 1:19*

**next** *[4] - 3:19, 7:19, 7:20, 8:20*

**noncompete** *[5] - 13:24, 14:13, 14:14, 14:17, 15:8*

**nonmoving** *[1] - 18:8*

**not** *[31] - 4:16, 4:17, 5:9, 7:12, 8:13, 9:6, 9:13, 11:11, 12:4, 12:5, 12:11, 12:17, 13:16, 14:2, 14:6, 14:11, 14:21, 14:22, 15:10, 16:22, 16:25, 17:2, 17:10, 17:14, 18:7, 18:15, 18:20, 18:22, 18:24, 18:25, 19:21*

**number** *[1] - 7:4*

**NUMBER** *[1] - 1:4*

### O

**obviously** *[1] - 13:25*

**occurs** *[1] - 15:8*

**October** *[1] - 15:14*

**OF** *[2] - 1:1, 2:10*

**officer** *[1] - 8:24*

**Official** *[1] - 1:23*

**Olsen** *[1] - 15:13*

**Olwig** *[1] - 3:17*

**OLWIG** *[1] - 1:18*

**onboarding** *[1] - 6:14*

**One** *[1] - 18:4*

**one** *[9] - 8:16, 8:17, 8:18, 8:20, 10:8, 16:5, 16:17, 17:20, 19:13*

**open** *[5] - 4:17, 4:18, 5:21, 11:3, 19:6*

**OPEN** *[1] - 3:1*

**opening** *[4] - 12:22, 12:23, 13:17, 14:5*

**operable** *[1] - 6:21*

**operating** *[1] - 16:14*

**opportunities** *[1] - 15:9*

**opportunity** *[2] - 4:5, 6:18*

**opposition** *[1] - 15:20*

**order** *[8] - 4:19, 5:7, 5:23, 6:13, 9:10, 9:18, 11:14, 19:10*

**Orlando** *[4] - 3:10, 3:12, 3:18*

**ORLANDO** *[1] - 1:16, 1:17, 3:9, 3:15, 3:17, 4:1, 4:10, 4:14, 5:6, 6:3, 6:8, 6:17, 6:20, 6:23, 7:3, 7:14, 7:23, 8:3, 8:18, 8:21, 9:6, 9:13, 9:23, 10:13, 10:16, 11:8, 11:14, 11:18, 11:22, 12:2, 12:7, 12:15, 12:25, 13:9, 13:18, 13:22, 14:12, 14:21, 15:1, 15:5, 15:22, 17:13, 17:18, 17:21, 19:13, 19:22*

**other** *[7] - 8:21, 9:4, 9:8, 9:11, 11:9, 12:22, 16:14*

**our** *[6] - 3:18, 7:6, 7:8, 10:1, 15:2*

**outline** *[1] - 7:24*

### P

**P.C** *[1] - 2:3*

**P.M** *[2] - 1:11, 3:3*

**p.m** *[1] - 19:25*

**paid** *[1] - 6:11*

**paper** *[1] - 9:24*

**papers** *[2] - 4:3, 7:6*

**Pappan** *[1] - 15:6*

**paragraph** *[2] - 10:18, 14:24*

**paralegal** *[1] - 3:18*

**part** *[5] - 7:19, 7:21, 9:25, 13:16, 16:15*

**particular** *[1] - 11:1*

**particularly** *[3] - 4:23, 7:8, 8:9*

**parties** *[2] - 19:8, 19:10*

**party** *[2] - 18:3, 18:8*

**past** *[1] - 5:1*

**pause** *[2] - 11:21, 13:8*

**paused** *[1] - 13:11*

**paying** *[2] - 6:6, 6:22*

**people** *[9] - 6:22, 7:17, 8:4, 9:9, 13:1, 13:2, 13:19, 14:5, 14:7*

**person** *[2] - 5:10, 17:20*

**personal** *[2] - 4:20, 5:24*

**Peter** *[1] - 10:6*

**Pharmaceuticals** *[1] - 18:1*

**phone** *[1] - 7:17*

**pitched** *[1] - 16:10*

**place** *[2] - 9:21, 9:23*

**PLAINTIFF** *[1] - 1:19*

**Plaintiff** *[1] - 1:5*

**plaintiff** *[7] - 3:8, 3:11, 3:24, 4:12, 18:14, 18:16, 18:24*

**platforms** *[1] - 9:10*

**platonic** *[1] - 5:13*

**please** *[1] - 4:5*

**point** *[2] - 19:11, 19:16*

**pointed** *[1] - 16:5*

**pose** *[1] - 4:7*

**position** *[2] - 10:22, 15:18, 15:24*

**potential** *[2] - 10:22, 15:18, 15:24*

**prefer** *[1] - 6:15*

**preliminary** *[3] - 3:7, 11:7, 18:7*

**presence** *[1] - 14:4*

**prevent** *[1] - 17:6*

**Pricing** *[1] - 7:15*

**primary** *[1] - 8:16*

**prior** *[1] - 9:3*

**problem** *[1] - 16:15*

**proceedings** *[1] - 19:25*

**Proceedings** *[1] - 1:25*

**PROCEEDINGS** *[1] - 3:1*

**process** *[2] - 6:3, 12:9*

**produced** *[1] - 1:25*

**product** *[33] - 4:11,*

*4:13, 4:14, 4:20, 4:22, 5:7, 5:20, 5:21, 6:2, 6:6, 6:11, 6:21, 6:22, 8:14, 9:1, 9:9, 9:22, 10:10, 11:1, 11:24, 12:11, 12:19, 12:24, 13:6, 13:14, 14:6, 14:8, 14:11, 17:2, 17:3*

**products** *[1] - 5:15*

**proof** *[5] - 11:9, 11:16, 11:18, 11:22, 16:7*

**proposition** *[1] - 15:13*

**protect** *[3] - 9:21, 10:10, 18:22*

**providing** *[1] - 8:10*

**public** *[1] - 18:9*

**publicly** *[1] - 5:16*

**punch** *[1] - 7:12*

**purchased** *[1] - 11:23*

**purposes** *[1] - 5:24*

**pursuant** *[1] - 16:3*

**put** *[11] - 4:18, 5:7, 5:18, 5:22, 7:4, 9:25, 10:7, 16:23, 18:19, 19:10, 19:17*

### Q

**question** *[3] - 4:4, 4:5, 4:7*

**questions** *[2] - 6:16, 19:6*

**quintessential** *[1] - 5:13*

**quite** *[1] - 12:4*

**quote** *[1] - 7:20*

### R

**RACHEL** *[1] - 2:4*

**Rachel** *[1] - 3:21*

**raise** *[1] - 8:11*

**raising** *[1] - 15:16*

**Rakowski** *[1] - 3:18*

**read** *[6] - 4:3, 7:21, 9:16, 14:25, 15:15, 18:18*

**Reading** *[1] - 7:15*

**really** *[2] - 7:21, 16:6*

**reason** *[2] - 9:25, 19:9*

**received** *[1] - 13:20*

**recognize** *[1] - 14:14*

**record** *[5] - 14:2, 18:18, 18:19, 19:12, 19:16*

**recorded** *[1] - 1:25*

**refer** *[1] - 17:17*

**refined** *[1] - 12:5*

**regulation** *[1] - 9:11*

**relief** *[8] - 14:20, 14:23, 16:3, 17:5, 17:24, 18:7, 18:9, 18:25*

**relieve** *[1] - 18:16*

**remarks** *[1] - 4:4*

**remedy** *[2] - 17:24, 19:8*

**removed** *[1] - 5:15*

**replacement** *[1] - 13:12*

**reply** *[3] - 7:8, 10:1, 10:2*

**Reporter** *[1] - 1:23*

**represent** *[1] - 13:5*

**representing** *[2] - 16:16, 17:1*

**request** *[2] - 19:13, 19:20*

**requests** *[1] - 19:15*

**require** *[2] - 4:24, 14:19*

**restraining** *[1] - 9:18*

**result** *[3] - 7:2, 8:1, 18:8*

**resulting** *[1] - 15:9*

**results** *[1] - 10:9*

**reticence** *[1] - 8:10*

**revenues** *[1] - 8:10*

**Right** *[1] - 13:3*

**right** *[7] - 4:14, 6:21, 12:18, 13:16, 13:22, 14:17, 17:5*

**rise** *[1] - 19:24*

**risk** *[1] - 15:18*

**rolled** *[4] - 11:10, 11:23, 11:24*

**rule** *[2] - 14:20, 16:3*

**ruling** *[1] - 19:10*

**running** *[1] - 12:4*

**RYDAROWSKI** *[1] - 1:17*

**Rydarowski** *[1] - 3:11*

### S

**safeguards** *[1] - 9:20*

**said** *[4] - 4:17, 9:17, 13:14, 15:2*

**sales** *[2] - 7:16, 8:7*

**same** *[2] - 5:20, 9:1*

**sample** *[1] - 13:21*

**samples** *[1] - 12:12*

**sampling** *[1] - 12:14*

**saw** *[1] - 15:17*

**say** *[4] - 6:15, 11:3, 11:16, 12:13*

**saying** *[3] - 8:15, 13:6, 15:25*

**says** [4] - 7:5, 7:14, 9:15
**scenario** [1] - 14:18
**School** [2] - 10:3, 10:4
**SCHOTZ** [1] - 2:3
**Schotz** [1] - 3:22
**search** [2] - 9:9, 12:17
**searching** [1] - 17:6
**seats** [1] - 3:19
**SEC** [1] - 4:23
**secret** [11] - 4:8, 4:11, 4:16, 5:4, 5:6, 5:12, 5:13, 5:19, 5:25, 10:21, 18:19
**secrets** [1] - 10:18
**security** [2] - 9:24, 10:8
**see** [6] - 9:16, 11:10, 11:25, 12:3, 12:21, 16:13
**seeking** [1] - 19:9
**seem** [1] - 19:2
**seems** [2] - 12:25, 18:25
**SEMPER** [2] - 1:13, 3:2
**set** [1] - 18:21
**shareholder** [1] - 7:9
**shop** [1] - 12:22
**should** [1] - 17:25
**shouldn't** [1] - 16:2
**show** [4] - 7:18, 10:2, 11:14, 18:15
**shows** [1] - 18:3
**signed** [2] - 14:22, 14:24
**significant** [1] - 19:2
**signing** [1] - 6:12
**simply** [1] - 14:10
**since** [5] - 5:15, 6:25, 7:24, 11:6, 11:11
**single** [1] - 7:17
**sit** [1] - 6:5
**situated** [1] - 13:15
**situation** [1] - 14:21
**social** [1] - 5:2
**soft** [4] - 12:22, 12:23, 13:16, 14:5
**sold** [1] - 6:6
**soliciting** [1] - 13:11
**some** [3] - 8:10, 19:11, 19:16
**something** [5] - 7:13, 9:16, 16:23, 19:17, 19:21
**soon** [1] - 10:9
**sort** [2] - 11:10, 12:9
**source** [3] - 4:17, 4:18, 5:21
**space** [2] - 8:23, 8:24

**speaking** [1] - 17:11
**specific** [3] - 10:21, 11:11, 18:20
**specifically** [1] - 11:4
**specifics** [1] - 5:11
**spent** [1] - 14:7
**sphere** [1] - 12:8
**Spilman** [1] - 10:20
**Spilman's** [1] - 16:18
**spoken** [1] - 7:18
**standard** [1] - 17:23
**start** [2] - 8:12, 8:25
**started** [2] - 6:13, 8:5
**starting** [1] - 3:8
**STATES** [3] - 1:1, 1:13, 3:3
**staying** [1] - 16:9
**stenographically** [1] - 1:25
**steps** [3] - 7:20, 12:18, 18:22
**still** [4] - 16:16, 16:18, 16:20, 17:6
**stopped** [1] - 6:12
**straight** [2] - 15:10, 15:23
**STREET** [3] - 1:10, 1:18, 2:4
**structure** [1] - 9:21
**sub** [1] - 12:22
**success** [3] - 18:4, 18:14, 18:17
**succinct** [1] - 4:8
**such** [1] - 18:9
**suffer** [4] - 16:12, 18:5, 18:15, 18:25
**suffered** [1] - 7:2
**suffering** [1] - 8:1
**sufficient** [1] - 19:20
**sufficiently** [1] - 18:15
**suit** [1] - 6:25
**summer** [1] - 13:10
**sure** [4] - 6:20, 10:15, 12:18, 15:4
**switching** [1] - 12:16
**System** [1] - 15:7

**T**

**talk** [3] - 6:18, 9:20, 11:2
**talked** [1] - 7:11
**talking** [3] - 12:23, 14:4, 17:19
**talks** [1] - 10:20
**tangible** [1] - 19:3
**TCC** [3] - 7:2, 8:1, 9:3
**tech** [1] - 5:10
**technology** [2] - 8:24, 8:25

**tell** [1] - 11:5
**temporary** [1] - 9:18
**term** [1] - 12:13
**terms** [8] - 4:8, 7:3, 10:10, 10:11, 10:22, 13:11, 17:4, 17:13
**test** [2] - 12:9, 12:13
**than** [3] - 13:15, 15:18, 17:20
**thank** [6] - 15:20, 17:8, 17:22, 19:12, 19:22, 19:23
**THE** [55] - 1:1, 1:13, 1:19, 3:2, 3:4, 3:14, 3:16, 3:19, 3:24, 4:3, 4:13, 5:4, 6:2, 6:5, 6:15, 6:18, 6:21, 6:25, 7:11, 7:21, 7:24, 8:15, 8:20, 9:3, 9:7, 9:16, 10:12, 10:15, 10:24, 11:13, 11:16, 11:20, 12:1, 12:3, 12:12, 12:21, 13:1, 13:4, 13:13, 13:19, 14:1, 14:16, 14:25, 15:4, 15:15, 15:23, 16:22, 17:8, 17:10, 17:17, 17:19, 17:22, 19:15, 19:23, 19:24
**theoretically** [1] - 14:16
**they've** [1] - 14:10
**Third** [4] - 15:7, 15:12, 18:2, 18:12
**Three** [1] - 18:7
**three** [1] - 7:16
**time** [3] - 3:19, 7:17, 11:25
**today** [5] - 6:5, 11:1, 11:5, 14:3, 18:19
**together** [4] - 4:19, 5:7, 5:18, 5:22
**trade** [12] - 4:8, 4:11, 4:16, 5:4, 5:6, 5:12, 5:13, 5:19, 5:25, 10:18, 10:21, 18:19
**Transcript** [1] - 1:25
**transcription** [1] - 1:25
**TRES** [1] - 1:7
**Tres** [3] - 3:5, 3:23, 9:1
**trial** [1] - 16:8
**tries** [1] - 8:11
**TRO** [2] - 7:1, 7:24
**TROs** [1] - 15:6
**troubling** [1] - 18:23
**true** [2] - 16:1
**TUESDAY** [1] - 1:11

**two** [1] - 10:8
**Two** [1] - 18:5

**U**

**U.S** [1] - 1:10
**ultimate** [1] - 5:12
**unbelievable** [1] - 7:16
**under** [1] - 17:7
**understand** [2] - 15:16, 16:19
**understanding** [2] - 6:8, 6:23
**unique** [1] - 18:21
**UNITED** [3] - 1:1, 1:13, 3:3
**unlawful** [1] - 15:8
**unquantifiable** [1] - 7:5
**unquote** [1] - 7:20
**until** [1] - 13:12
**up** [7] - 6:12, 8:12, 8:25, 9:4, 12:4, 15:23, 18:21

**V**

**verse** [1] - 4:21
**violation** [3] - 13:24, 14:17, 15:8

**W**

**waiting** [1] - 11:10
**WALNUT** [1] - 1:10
**warrant** [1] - 19:4
**website** [1] - 16:21
**week** [2] - 11:15, 19:11
**Weil** [1] - 10:3
**West** [1] - 12:16
**whether** [4] - 12:11, 13:20, 14:2, 18:21
**which** [3] - 4:20, 8:11, 14:15
**white** [1] - 9:24
**whole** [1] - 12:18
**why** [4] - 15:16, 15:23, 16:2, 16:19
**within** [1] - 11:14
**without** [1] - 8:12
**words** [3] - 14:8, 14:9
**works** [2] - 11:25, 12:19

**Z**

**Zev** [1] - 10:20