UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOOP HQ, INC.,<br><br>       Plaintiff,<br>   v.<br><br>JEREMIAH CHURCH and TRES COMMA COMPLIANCE INC.<br><br>       Defendants. | Civil Action No. 2:25-cv-12562-JKS-CLW<br><br>Civil Action<br><br>STIPULATION AND ORDER GOVERNING ELECTRONICALLY STORED INFORMATION AND DISCOVERY |

**I.**     **PURPOSE AND SCOPE.**

    **A. General**. This Order shall govern the production of hard copy documents and electronically stored information ("ESI") in this action. All productions made pursuant to this Order are subject to prior orders issued in this matter, including the Discovery Confidentiality Order (the "DCO"). All prior orders and stipulations entered in this action remain in full force and effect, except to the extent they are inconsistent with this Order, in which case this Order shall control.

    **B. Scope**. Nothing in this Order is intended to be an exhaustive list of discovery obligations or rights of the party producing discoverable information ("Producing Party") or a party requesting discoverable information ("Requesting Party"), or any other party or non-party. To the extent additional obligations or rights not addressed in this Order arise under the Federal Rules of Civil Procedures, local rules, or applicable state and federal statutes, those authorities shall govern.

    **C. Variations**. In light of the varying and disparate data systems and architectures employed by the parties, variation from this Order may be required. If any party identifies a circumstance or sets forth a request where application of this Order is not technologically possible or practicable, the Producing Party will disclose to the Requesting Party the reason(s) for, and circumstances surrounding, the need to vary from this Order, and the parties will meet and confer in an effort to reach agreement on an appropriate deviation from this Order. The parties will continue to meet and confer regarding any other issues as necessary and appropriate, including search terms and modifications to the scope of this Order based upon discovery. If the parties cannot reach agreement, the matter may be submitted to the Court for determination.

    **D. Limitations and Non-Waiver**. The parties and their attorneys do not intend by this Order to waive their rights to any protection or privilege, including the attorney-client privilege and work product doctrine, or their rights to object to any discovery requests.

**II.**     **PRESERVATION AND DISCOVERY EFFORTS.**

The parties have discussed their preservation obligations and needs and agree that preservation of potentially relevant ESI within the parties' possession, custody, or control will be reasonable and proportionate. The parties will continue to discuss preservation periodically as the case and issues evolve. To reduce the costs and burdens of preservation and to ensure proper ESI is preserved, the parties agree that:

A. **Accessible ESI**: Except as set forth in Section II.B. below, reasonably accessible sources of ESI may include, but may not be limited to, email accounts, cloud-based accounts, shared network drives, workstation or laptop hard drives, and/or external media.

B. **Not Reasonably Accessible ESI**. The parties agree that the circumstances of this case do not warrant the preservation, review, or production of ESI that is not reasonably accessible. For purposes of this paragraph, the parties agree that the following sources of ESI are presumed not reasonably accessible[1]

   1. Backup tape, media, and systems created for the sole purpose of disaster recovery.

   2. Legacy data (e.g., data created by or only accessible through decommissioned, outdated, obsolete, or unavailable systems/software or similarly disproportionate means).

   3. Residual, deleted, fragmented, damaged, or temporary data (e.g., data stores in a computer's RAM, Slack space on computer drives).

C. **Filtering**.

   1. Agreed Upon Protocols.

      (A) The parties agree that source code and the contents of the Zip File collected from Jack Ford may be produced via Data room and shall be treated, in the first instance, as Attorneys' Eyes Only pursuant to the Discovery Confidentiality Order. Each party reserves the right to challenge that Attorneys' Eyes Only designation in accordance with the procedures set forth in the Discovery Confidentiality Order.

      (B) The parties have met and conferred and agreed on the protocols for collecting and producing ESI, which protocols are memorialized in **Exhibit A** and **Exhibit B** hereto.

      (C) The parties acknowledge that there may be circumstances where modification to a previously agreed upon search protocol (including those set forth in Exhibits A and B) may be warranted. Should a party believe that such an instance has arisen, the parties

---

[1] Such presumption may be rebutted, however, and nothing prevents any party from seeking discovery concerning whether such sources of ESI are reasonably available.

will meet and confer about possible methods to search ESI if either party requests such a meet and confer.

(D) Nothing herein, however, relieves the producing party of any duty to produce known responsive documents, to undertake reasonable efforts to locate responsive documents, or to supplement discovery responses – even if such documents are not within the scope of the protocol set forth in Exhibits A and B.

(E) Nothing in this Order shall be construed or interpreted as precluding a producing party from performing a responsiveness or privilege review to determine if the documents captured by search terms are in fact relevant to the claims and defenses at issue and discoverable.

2. **De-Duplication and Email Threading**. A Producing Party shall use commercially reasonable efforts to de-duplicate identical ESI globally and across all custodians based upon commercially accepted method (e.g., MD5 or SHA-1 hash values, at the family level). All electronic documents bearing an identical value are a duplicate group. The Producing Party shall produce only one copy of any duplicate group to the extent practicable.

   A Producing Party may, it its discretion, elect to produce only the most inclusive emails in the email thread group and need not produce lesser-included emails, unless the lesser email contains attachments that would not be included in the top level email. The Requesting Party, however, retains the rights to request production of specific lesser-included emails, and the parties agree to meet and confer in good faith concerning the production of the specifically requested lesser-included emails.

3. **De-NISTing**. To the extent feasible, each party shall endeavor to De-NIST electronic files and, remove commercially available operating-system and application-file information contained on the current NIST file list. If the Producing Party proposes to apply additional filters that identify common system files, non-user-generated files, and/or zero-byte files (i.e., computer files containing no data), the Producing Party will provide details to the parties regarding the filters, how they work, and what impact (if any) they will have on the collections or productions. No later than five (5) days after such disclosure, the parties will meet and confer in an effort to reach agreement on any additional filters. In the event that the parties cannot reach agreement, the matter may be submitted to the Court for determination.

D. **Timeframe**.

1. **Rolling Production**. The parties will produce documents, including ESI, on a rolling production basis. The parties will communicate with each other about their respective priorities for production and agree to cooperate in good faith, and to use good faith efforts to respond to reasonable requests for prioritized production, taking into account the volume of responsive information, its relative accessibility, efficiencies in the process of search and review, and additional processing time required for certain types of ESI.

      **2. Supplemental Production**. Each party reserves the right to supplement production as needed.

  E. **Non-Party Documents**. A party that issues a non-party subpoena ("Issuing Party") shall be responsible for producing to all other parties any documents that were obtained pursuant to any non-party in the form in which they were produced by the non-party. For the avoidance of doubt, nothing in the ESI protocol Order is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or non-parties to object to a subpoena.

**III.**    **FORM OF PRODUCTION**.

  A. **General Format (Image/Text/Metadata)**. Except as otherwise provided herein, ESI shall be produced in standard Relativity/Concordance format, specifically:

- IMAGES: 300 dpi single-page Group IV .TIF or .JPEG image files, named the same as the Bates production number endorsed on each image. Images shall be contained in a folder called "IMAGES".

- TEXT: Extracted or OCRed text shall be provided for each document. The multi-page text files shall be named the same as the Bates number of the first page of the document, with the extension .TXT. The text files shall be contained in a folder called "TEXT".

- NATIVES: Excel spreadsheets, PowerPoint presentations, and items that are not conducive to imaging such as audio/video files should be produced in their native format, each with a .TIF placeholder page indicating that the file is being produced in native format. The native file should be named the same as the Bates number endorsed on the placeholder page. The .TIF placeholder pages should be contained in the aforesaid "IMAGES" folder. The native files shall be contained in a folder called "NATIVES".

- LOAD FILES: A standard Relativity/Concordance delimited text file (.DAT) and an image linking load file in Opticon format (.OPT) should be provided in a folder called "DATA". Below is a list of metadata fields that are to be included in each .DAT file[2]:

---

[2] In lieu of the following fields, TxtMsg Thread Participants, TxtMsg Thread Group, TxtMsg Timestamp, the parties may provide a UFDR file.

| | |
|---|---|
| BegDoc and EndDoc[3] | Filesize |
| BegAttach and EndAttach* | DateCreated and TimeCreated* |
| Custodian and Deduped Custodians* | DateLastMod and TimeLastMod* |
| Source | Sort Date/Time |
| ParentID | TxtMsg Thread Participants |
| AttachIDs | TxtMsg Thread Group |
| AttachmentList | TxtMsg Timestamp |
| To, From, CC and BCC* | MD5Hash |
| DateSent and TimeSent* | Conversation Index |
| DateRcvd and TimeRcvd* | ThreadID |
| Email Subject | EntryID |
| DocAuthor | MsgID |
| DocTitle | IntMsgID |
| DocType | PageCount |
| Application | Redactions (Y/N) |
| Filename | Confidentiality Designation |
| FileExt | NativeFilePath |
| Folder | TextFilePath |
| FilePath | |

B. **Dynamic Files**. When there is a legitimate need to present content of the file that cannot be derived from a static image and/or optional full text, a party may, at its option, produce these types of dynamic files in native form for reviewed in the native application. To the extent that print-outs or images of all or part of documents were also maintained in the ordinary course of business in static form (e.g., as a PDF attachment), these documents will be produced as static images.

C. **Conversion not Applicable or Practicable**. Due to the nature or complexity of storage of some ESI (e.g., ESI in custom or proprietary applications, website content, etc.), conversion to static image form may be overly burdensome. The parties reserve the right to provide this ESI in some other reasonably usable format. Certain types of files such as system and program files, audio/video files, etc. will not be amenable to conversion into TIFF format. When they are present the files will not be converted into TIFF format but will be presented in the form of a placeholder TIFF image. The Receiving Party may request production of such files in a reasonably usable form (such as native) upon a showing of the need for and relevance of the file.

D. **Image Not Readable**. Where TIFF images of certain documents are not legible, the parties may request their production in native or other appropriate format.

E. **Encryption and Password Protection**. With respect to any ESI items that are password-protected or encrypted, the Producing Party will take reasonable steps to locate and apply encryption keys so that relevant documents can be reviewed

---

[3] As separate fields.

and produced if appropriate. In the event that encrypted or password-protected documents, which are reasonably likely to be responsive to a document request, remain for a particular custodian after such reasonable efforts have been made, the Producing Party shall advise the Receiving Party.

## IV. PRIVILEGE.

A. Each party will review documents for privileged information (or other information subject to a recognized immunity from discovery) prior to production. Documents that contain both privileged and non-privileged information will be produced with the privileged information redacted in such a way as to show the location of the redaction within the document and the reason therefore (e.g., "Redacted – Attorney Client Privilege" or "Redacted – Work Product" or equivalent). Documents or portions thereof withheld on privilege grounds will be identified in a privilege log in accordance with Fed. R. Civ. P. 26(b)(5) that will be produced on a rolling basis within 45 days of document productions; the producing party may request an extension of this period on consent of the Receiving Party, which consent shall not be unreasonably withheld. Neither party shall be required to log documents exchanged between a party and its in-house or retained counsel on or after the date of filing of the initial Complaint, unless the document or communication was shared with a third party (in which case any claim of privilege must be supported on the party's privilege log).

B. Privilege logs shall be provided in compliance with Rule 26, including providing sufficient information to describe the nature of the documents, communications, or tangible things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim of privilege. The Producing Party may generate its privilege log through the export of objective metadata fields from the privileged documents, together with any other information, if any, necessary to provide sufficient information to evaluate the claim of privilege. In the event the Receiving Party in good faith believes that document(s) on the privilege log are responsive, discoverable, and do not reflect privileged information, or is unable to discern the basis of the privilege from the information provided, the parties agree to meet and confer over such issues, and permit supplementation of the privilege log entries prior to seeking relief from the Court.

C. Privileged information produced in this matter will be handled in accordance with Fed. R. Civ. P. 26(b)(5)(B) and Fed. R. Evid. 502(d) and as further addressed in the DCO entered in this matter.

## V. MISCELLANEOUS PROVISIONS.

A. **Disputes**. The parties shall make good faith efforts to comply with and resolve any differences concerning compliance with this Order. No party may seek

6

relief from the Court concerning compliance with this Order unless it has first conferred in good faith with the other parties.

**B. Right to Request Additional Information**. The agreements set forth herein are without prejudice to the right of the Requesting Party to request additional information about ESI and discovery in accordance the Federal Rules of Civil Procedure.

**C. Effect of Order**. The parties' agreement to this Order is without prejudice to the right of any party to seek an order from the Court to rescind or amend this Order for good cause shown. Nothing in this Order shall abridge the rights of any person to seek judicial review or to pursue other appropriate judicial action with respect to any discovery ruling made by the Court in this matter. Likewise, this Order may be modified by a Stipulated Order of the parties or by the Court for good cause shown. If the parties cannot resolve any disagreement regarding a proposed modification of the protocol established in this Stipulation and Order, the parties shall submit their competing proposals and a summary of their dispute to the Court or in any other way that the Court directs the parties to resolve the issue(s) that requires a proposed modification.

**IT IS SO STIPULATED.**

Dated:

*/s/*  
Jason F. Orlando, Esq.  
Debra R. Rydarowski, Esq.  
Murphy Orlando LLC  
494 Broad Street, 5th Floor  
Newark, New Jersey 07102  

*Attorneys for Plaintiff Loop HQ, Inc.*

*/s/ DRAFT*  
Warren A. Usatine, Esq.  
Rachel A. Mongiello, Esq.  
Sean P. Carey, Esq.  
Cole Schotz P.C.  
25 Main Street  
Hackensack, New Jersey 07601  

*Attorneys for Defendants Jeremiah Church and Tres Comma Compliance, Inc.*

**IT IS SO ORDERED.**

Dated:  March 9, 2026

*s/Cari Fais*  
Hon. Cari Fais, U.S.M.J.

69945/0001-52568183

## EXHIBIT A – PROTOCOL FOR COLLECTION OF PLAINTIFF'S ESI

1. Plaintiff shall collect ESI from the following custodians (the "Custodians")[1],[2]:

    a. Greg Fragin

        i. ▮▮▮@gmail.com

        ii. ▮▮▮@uskape.com

        iii. ▮▮▮@loophq.com

        iv. ▮▮▮@ducatig.com

        v. WhatsApp

        vi. Texts, iMessage, and SMS

    b. Zev Spilman

        i. ▮▮▮@loophq.com

    c. Jeremiah Church

        i. ▮▮▮@loophq.com

    d. Sarah Tran

        i. ▮▮▮@loophq.com

2. Plaintiff shall collect ESI from the above Custodians by creating a Google Takeout or Microsoft Purview export on its email and document repositories (drive for google and sharepoint and onedrive for Microsoft). Plaintiff will process collected data utilizing Cloud nine ediscovery software and run the search terms listed below.

3. For the Custodians listed as having responsive WhatsApp and text messages, Plaintiff shall utilize Celebrite UFED to create an image of the phone and run the searches below in Celebrite Physical Analyzer to the extent possible.

4. In addition, Plaintiffs provided a data map and discussed additional systems to be added to the current data map that may contain responsive data. In Defendants' Document Request

---

[1] Plaintiff and Defendants are currently still negotiating the potential inclusion of additional custodians, including Gary Fragin and Peter Kolevzon. The parties shall present any disputes concerning custodians, after a good faith effort to meet and confer regarding the same, to the Court.

[2] The parties agree to meet and confer on producing direct messages from social media and other messaging apps and will raise any unresolved disputes with the Court.

No. 50, Defendants have requested log files and other documents relating to certain of Defendants systems (for the full extent of the requested documents, see Defendants Document Request No. 50). The parties agree to work cooperatively in connection with Plaintiff's extraction of such data from Plaintiff's systems.

5. The parties have agreed that the above locations are the primary sources for email, documents and log files. If, however, Plaintiff or a Custodian knows of additional locations on their computers or elsewhere that may contain relevant information that would not exist in the above locations whether in the form of documents, communications, log files or otherwise, the Custodian will work with the vendor to include such locations in their collection, processing and search.

6. Except as limited below with respect to certain search terms, Plaintiff shall collect ESI for the following time period: January 1, 2020 to October 14, 2025 ("Time Period").

7. Plaintiff is not required to log privileged communications occurring after June 10, 2025, provided that the entirety of the chain is between Plaintiff and Plaintiff's counsel with no third parties present on the communication (excepting only Plaintiff's vendors and/or experts retained in connection with this litigation[3]).

8. Search Terms:

    a. The parties are currently still negotiating search terms. After this protocol is entered, the parties agree to provide search term reports run on the parties' eDiscovery platforms to support any of their objections to proposed search terms and shall meet and confer to negotiate in good faith the narrowing of any such search that yields a large set of data. The parties shall present any remaining disputes to the Court.

9. Plaintiff's counsel shall conduct a responsiveness and privilege review of the ESI identified from the above steps and produce the same to Defendants' counsel.

---

[3] The names of vendors and experts shall be disclosed to the other party in advance.

## EXHIBIT B – PROTOCOL FOR COLLECTION OF DEFENDANTS' ESI

1. Defendants shall collect ESI from the following custodians[1],[2]:

    a. Jeremiah Church

        i. ███████@gmail.com

        ii. Church's personal Google Drive account

        iii. Church's personal Dropbox

        iv. Church's personal OneDrive

        v. Text, iMessage, and SMS

        vi. WhatsApp

    b. Tres Comma Compliance

        i. ███████@commacompliance.com

        ii. ███████@commacompliance.com

        iii. ███████@trescommacompliance.com

        iv. ███████@trescommacompliance.com

        v. ███████@commacompliance.com

        vi. ███████@commacompliance.com

        vii. TCC's Google Drive

        viii. TCC's OneDrive

        ix. WhatsApp

2. Defendants shall collect ESI from the above custodians by creating a Google Takeout export on its email and google drive repositories. Defendant will process collected data

---

[1] If any additional custodians are identified throughout discovery, Plaintiff reserves the right to request that the accounts of such custodians be searched, and the parties agree to meet and confer regarding same.

[2] The parties agree to meet and confer on producing direct messages from social media and other messaging apps identified by the custodians in their answers to interrogatories and will raise any unresolved disputes with the Court.

    utilizing GoldFynch eDiscovery software and run the identified search terms as detailed below.

3. Defendants shall utilize Celebrite UFED or an equivalent mobile forensic data extraction tool to create an image of Church's phone and run the searches below in Celebrite Physical Analyzer to the extent possible.

4. The parties have agreed that the above locations are the primary sources for email and documents. If, however, a custodian knows of additional locations on their computers or elsewhere that may contain relevant information that would not exist in the above locations whether in the form of documents, communications, log files or otherwise, Defendants will include such locations in their collection, processing and search.

5. In addition, Defendants have provided a data map. Plaintiff has requested that Defendant Church provide an affidavit certifying the accuracy and completeness of Defendants' data map and confirming the absence of any "Loop data" on the devices identified therein. The parties are continuing to meet and confer regarding the definition of "Loop data" and other issues related to the affidavit. Defendant Church will endeavor to provide the affidavit within two weeks of this Order, provided the parties have sufficiently conferred on the relevant terms, and the parties shall present any remaining disputes concerning the scope or content of the affidavit to the Court if they are unable to reach agreement.

    a. Plaintiff reserves the right to image and perform such searches and analyses are necessary to determine whether Loop Data exists or ever existed on the devices set forth on Defendants' data map. The parties agree to meet and confer regarding any such request.

6. Defendants shall collect ESI for the following time period: January 1, 2020 to October 14, 2025.

7. Defendants are not required to log privileged communications occurring after June 10, 2025, provided that the entirety of the chain is between Defendants and Defendants' counsel with no third parties present on the communication (excepting only Defendants' vendors and/or experts retained in connection with this litigation[3]).

8. Search Terms:

    a. The parties are currently still negotiating the search terms. After this protocol is in place, the parties agree to provide search term reports run on the parties' eDiscovery platforms to support any of their objections to proposed search terms and shall meet and confer to negotiate in good faith the narrowing of any such search that yields a large set of data. The parties shall present any remaining disputes to the Court.

    b. Defendants with counsel oversight will review the ESI collected and processed with search term hits (the "Data Set") and exclude privilege or irrelevant ESI (*e.g.*,

---

[3] The names of vendors and experts shall be disclosed to the other party in advance.

      documents relating to separate business ventures, confidential or personal information unrelated to the lawsuit, etc.) (the "Excluded ESI").

c. Defendants with counsel oversight will exclude this Excluded ESI from the Data Set and will prepare a log for Plaintiff's review of identifying all Excluded ESI and the basis for the exclusion.

d. Defendants will provide the Data Set with the Excluded ESI removed (the "Modified Data Set") to Plaintiff, along with the Excluded ESI log.

e. Defendants may apply redactions to ESI in the Modified Data Set to the extent it includes highly confidential information (such as social security numbers, driver's license numbers, access credential, etc.).

f. After Plaintiff's receipt of the Excluded ESI log, the parties shall meet and confer as needed with respect to any objections relating thereto.