**MURPHY ORLANDO** LLC
*Attorneys at Law*

494 BROAD STREET • 5TH FLOOR • NEWARK, NJ 07102
*tel* 201.451.5000 • *fax* 201.451.5000
WWW.MURPHYORLANDO.COM

drydarowski@murphyorlando.com

DEBRA R. RYDAROWSKI
*PARTNER*

July 17, 2026

***Via CM/ECF***
Hon. Cari Fais, U.S.M.J.
Martin Luther King Building & U.S. Courthouse
50 Walnut Street Room 4015
Newark, NJ 07101

**Re: Loop HQ, Inc. v. Jeremiah Church and Tres Comma Compliance, Inc.**
**Docket No. 2:25-cv-12562-JKS-CF**

Your Honor:

The parties have met and conferred and are unable to agree upon dates for the joint proposed amended scheduling order. The parties present their positions below and thank the Court for its attention to this matter.

**Plaintiff's position**

Plaintiff proposes the following dates for the remainder of discovery:

1. Fact discovery, including depositions: 9/3/27
2. Motions to add new parties: 5/7/27
3. Affirmative expert reports: 11/5/27
4. Responsive expert reports: 1/7/28
5. Expert depositions: 3/3/28
6. Quarterly case management conference with the Court

As Your Honor is aware, this is a factually and technically complex case that has been, and continues to be, replete with discovery disputes. While the parties have worked out custodian and most search term disputes and are continuing to resolve any remaining search term disputes, the bulk of ESI has yet to be produced and will require Plaintiff to manually review tens of thousands of documents, plus text and WhatsApp messages. Much of Plaintiff's review to date has been of highly technical documents, requiring consultation with experts and resulting in extended review periods. Privilege log creation will also be time consuming, as Plaintiff's secretary of the Board is also their attorney, rendering many communications subject to the attorney-client privilege. The parties also originally agreed to delay discovery of direct messages from social media and other

messaging apps (as reflected in the ESI Protocol Dkt. 56, p8 n2), such that additional time may be needed if any party discovers information that puts these messaging apps at issue.

In addition, while Defendants—after multiple refusals and meet and confers—have committed to resolving many discovery deficiencies, they have yet to actually remedy most of them: they have yet to amend any of their written discovery responses or produce most the disputed documents, **<u>including Defendants' proprietary source code</u>**, which is at the heart of this litigation and which, per Defendants' request, will require additional time to negotiate a separate ESI protocol for the production of such. In fact, most of Defendants' production consists of emails from mailing lists. The remainder consists of public source code, meaning source code that is already publicly available and is not Defendants' proprietary code. Notably, Defendants have produced a grand total of **<u>six</u>** out-going emails, thus evidencing the amount of outstanding and potentially disputed discovery remaining.

In addition to Defendants' failure to produce agreed upon discovery, Plaintiff will also be filing a discovery dispute letter in regard to documents that Defendants continue to refuse to provide, including all of Church's login credentials he created for himself to access Loop's systems and the purpose of each, and communications with TCC's customers, potential customers, investors, potential investors, and referral sources. In fact, Defendants originally provided the names of their customers in their written responses to discovery but did not provide any identifying information. Plaintiff has requested this information, and Defendants have now refused to identify their customers. Thus, these disputes will go before the Court. In addition, Plaintiff has requested forensic imaging of Defendants' devices due to evidence Plaintiff has discovered that Church accessed, cloned, and potentially modified Plaintiff's proprietary source code **<u>after</u>** Church's resignation, such that the parties need another meet and confer to discuss before bringing this dispute to the Court.

There are also outstanding discovery requests, including a second request for documents served by Defendants, two third-party subpoenas served by Plaintiff on DropBox and GitHub, and, most recently, Defendants' request for leave to file a premature motion for summary judgment based upon their blatant misrepresentations of both fact and law that Plaintiff must now take time to respond to. Plaintiff anticipates serving subpoenas once Defendants disclose their customers and will, in addition to party depositions, need to depose Jack Milford Ford, Esq., who was Church's attorney and recipient of the "Zip File." That deposition may raise issues of privilege that will be litigated. Plaintiff also anticipates serving a deficiency letter on Defendants for GitHub data that Defendants have not produced and will evidence critical data including the history of its code development. Plaintiff also intends to file a joint AEO dispute letter and seek adverse inferences due to Church's disposal of his hard drives after creating the Zip File and purportedly deleting all of Loop's data. Finally, Plaintiff anticipates expert discovery to be complicated and contentious and notes that a significant amount of time must be allowed for this phase of discovery.

In addition to these known issues and disputes, Plaintiff anticipates additional disputes as discovery continues. Plaintiff's counsel also has a federal criminal trial involving allegations of multi-million-dollar bank fraud before Judge Neals scheduled for October that will likely last several weeks. For these reasons, Plaintiff believes Defendants' proposed scheduling is not practical and will result only in additional disputes and requests for extensions.

In response to Defendants' assertions that Plaintiff has created delays, the Court should note the following. First, Defendants did not provide their revisions to Plaintiff's "AEO" letter, sent to them on June 17, 2026, until July 6, 2026, knowing full well that Plaintiff's counsel was on vacation that week and did not return until July 13, 2026, at which time the parties switched their focus to finalizing search term disputes and the joint scheduling order. Second, Plaintiff's production has been substantive and responsive to Defendants' very specific requests. Plaintiff has produced more than 90,000 documents, including its source code at the time of Defendants' misappropriation. As stated supra, it is Defendants who have not produced anything substantive, and who have delayed the production thereof with unsupported refusals that required multiple meet and confers and the drafting of dispute letters to resolve, and—despite their eventual agreement to produce—have still not produced most of these documents—**including their source code**[1]—that were identified in a deficiency letter dated April 9, 2026. Finally, Defendants also recognized in the parties' joint letter dated June 30, 2026 [Dkt. 73] that the parties had no search term or custodian disputes and were finalizing several modifications. Plaintiff's counsel was on vacation last week, and counsel for both parties continued this week to try to resolve the few remaining issues. Defendants' position, as usual, omits this material information.

**Defendants' position**

Defendants agree that the Court's involvement is needed here — not because this case is unusually complex, but because Plaintiff has spent months representing that it is looking into open issues, awaiting input from its vendor or client, or that the parties can resolve their differences without troubling the Court, all while declining to commit to any concrete dates. Defendants continue to experience unexplained delays in receiving substantive responses to routine discovery requests, and counsel's inquiries and requests to schedule meet and confers routinely go unanswered for weeks. That pattern, more than the substance of any single dispute, is why a defined schedule is necessary now.

The imbalance in this case remains stark. Defendants have produced 52,247 documents, while Plaintiff has produced only 313 documents from its own files — figures that continue to reflect the disparity noted in Defendants' May 7, 2026 letter to the Court (Dkt. 63).[2] Any

---

[1] Defendants' position attempts to blame their failure to produce their code on Defendants' completely irrelevant request for Plaintiff's **current** code when Plaintiff has already produced its code at the time of Defendants' misappropriation. Any attempt by Defendants to condition their production of relevant, responsive discovery on their irrelevant request is inappropriate and contrary to law. See, e.g., Standard Chlorine v. Sinibaldi, 821 F. Supp. 232, 257 (D. Del. 1992) (stating that a Defendant's conditional offer to comply with a discovery request based upon Plaintiff's "good faith production" of documents is not a sound legal basis for refusing to produce documents); Bayer AG v. Sony Elecs., Inc., 202 F.R.D. 404, 407 (D. Del. 2001) (concluding that Defendants cannot condition their response upon a mutual agreement). Plaintiff asked a month ago for a sample ESI protocol for the production of Defendants' code and Defendants have yet to send one. Thus, the delay rests solely with Defendants.

[2] On the subject of source code, Defendants have agreed to produce TCC's non-public source code on an Attorneys' Eyes Only basis once the parties agree upon a mutual protocol governing both

suggestion that Defendants bear responsibility for the pace of discovery is difficult to credit against this record. Defendants have been waiting months for Plaintiff to finalize the search terms that govern much of the remaining production on both sides, as reflected in the parties' April 27, 2026 (Dkt. 61) and June 12, 2026 (Dkt. 70) letters to the Court, which document Plaintiff's multi-month delay in providing search term reports. That issue remains unresolved, and Defendants continue to wait weeks for Plaintiff to address the basic issues needed to move discovery forward. Plaintiff has even blamed its failure to begin producing custodial documents on the fact that the parties have not confirmed an agreement as to search terms, notwithstanding that the delay in finalizing those terms rests with Plaintiff.

Plaintiff also has not finalized the joint letter addressing its Attorneys' Eyes Only designations, an issue that has been outstanding since March 25, 2026 and a letter that, from Defendants' perspective, has been substantially complete for weeks. In addition, every issue raised in the "Other Issues Unrelated to Specific Requests" portion of the June 12, 2026 joint discovery dispute letter (Dkt. 70) remains outstanding. For example, Defendants still have not received the iConect documents that Plaintiff's vendor represented on June 29, 2026 would be provided that day, and Defendants have received no further response on that issue. Defendants also continue to await updated, final search term reports.

Any complaint by Plaintiff regarding timing is difficult to reconcile with the history of this case. Plaintiff commenced this action by way of an emergency application for a temporary restraining order in July 2025, did not accommodate Defendants' request for additional time to retain counsel to respond to that application, and pressed for expedited discovery to support it. Nearly a year later, Plaintiff has made almost no meaningful production of its own, has devoted its energy to collateral disputes rather than production, and what it has produced has frequently been in improper form — including redacted productions stripped of metadata required by the ESI Protocol, as detailed in the parties' April 27, 2026 (Dkt. 61) and June 12, 2026 (Dkt. 70) letters. It is time for this case to move forward.

Plaintiff has an excuse for every delay and responds only to deadlines. Defendants' counsel, though currently in the midst of an emergent preliminary injunction briefing schedule in the Delaware Court of Chancery, continues to push this case forward, while Plaintiff cites one excuse after another for its inability to devote the necessary time and resources to this matter. Against that backdrop, Defendants propose the following schedule:

1. Document production: 10/1/26
2. Motions to amend/add parties: 12/18/26
3. Fact depositions completed: 1/29/27
4. Expert reports: 3/5/27 (affirmative) and 4/9/27 (responsive)

---

parties' production of source code, as discussed in the parties' June 12, 2026 letter (Dkt. 70). Plaintiff refuses to agree to any protocol that would also require it to produce its own current source code, insisting instead on one-way access to Defendants' code — a refusal addressed further in Defendants' July 15, 2026 letter to Judge Semper seeking leave to move for partial summary judgment (Dkt. 75), which explains why Plaintiff's refusal bears directly on whether the outdated code it relies upon retains any independent economic value.

5. Expert depositions completed: 5/7/27

Defendants respectfully request that the Court adopt this schedule and enter deadlines that will require this case to move forward. Defendants also renew the request set forth in the June 12, 2026 joint discovery dispute letter (Dkt. 70) that the Court consider regular case management conferences or the appointment of a Special Discovery Adjudicator to help keep discovery on track.

As always, Defendants appreciate the Court's time and attention to this matter.

* * *

Respectfully submitted,

Debra R. Rydarowski, Esq.

cc: All counsel of record via ECF