# MURPHY ORLANDO LLC
### *Attorneys at Law*

494 BROAD STREET • 5TH FLOOR • NEWARK, NJ 07102

*tel* 201.451.5000 • *fax* 201.451.5000

WWW.MURPHYORLANDO.COM

DEBRA R. RYDAROWSKI
*PARTNER*

drydarowski@murphyorlando.com

July 22, 2026

*Via CM/ECF*
Hon. Jamel K. Semper, U.S.D.J
Hon. Cari Fais, U.S.M.J.

> Re:    **Loop HQ, Inc. v. Jeremiah Church and Tres Comma Compliance, Inc.**
> **Docket No. 2:25-cv-12562-JKS-CF**

Dear Judge Semper and Judge Fais:

As you know, this firm represents Plaintiff Loop HQ, Inc. ("Plaintiff") in this matter. We write in response to Defendants' request for leave to file for partial summary judgment ("Request") filed on July 15, 2026. [Dkt. 75]. Before responding to Defendants' specific assertions, Plaintiff first points out that Defendants' request—as with most of their filings—is full of misrepresentations, including of the status of discovery and the law. Not one of the non-controlling cases cited by Defendants stands for what they claim it does.

## Defendants' Request Is Procedurally Inappropriate

The law is **very clear** that summary judgment is rarely justified when discovery is not complete, especially when the party seeking leave to file is deficient in responding to discovery requests seeking material information, as Defendants are here. See Shelton v. Bledsoe, 775 F.3d 554, 568 (3d Cir. 2015) ("If discovery is incomplete, a district court is rarely justified in granting summary judgment"); Hill v. UPMC Collections, No. 4:24-cv-1600, 2026 WL 796588, *2 (M.D. Pa. Feb. 23, 2026) ("As the text of Rule 56 implies, a summary judgment motion is premised upon the existence of a fully developed and materially uncontested factual record."); Dowling v. City of Philadelphia, 855 F.2d 136, 139 (3d Cir. 1988) ("The court is obliged to give a party opposing summary judgment an adequate opportunity to obtain discovery.") (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); Costlow v. United States, 552 F.2d 560, 563-64 (3d Cir. 1977) (holding that the court erred by granting summary judgment without reference to what might be developed in discovery)); Sames v. Gable, 732 F.2d 49, 51 (3d Cir. 1984) (holding that the district court erred by granting summary judgment while "pertinent discovery requests were still outstanding" because "[t]his court has criticized the practice of granting summary judgment motions at a time when pertinent discovery requests remain unanswered by the moving party").

The Federal Rules and case law evidence the importance of having a fully developed record by allowing the Court to defer or deny a motion for summary judgment "as a matter of course"

Hon. Jamel K. Semper, U.S.D.J. and Hon. Cari Fais, U.S.M.J.
Page 2

based upon the non-movant's declaration that it cannot present facts essential to justify its opposition. See Fed. R. Civ. P. 56(d); Shelton, supra; Doe v. Abington Friends School, 480 F.3d 252, 257 (3d Cir. 2007) ("District courts usually grant properly filed Rule 56(f)[1] motions as a matter of course. . . . This is particularly so when there are discovery requests outstanding or relevant facts are under the control of the moving party… If discovery is incomplete in any way material to a pending summary judgment motion, a district court is justified in not granting the motion.") (quotations omitted). If the Court were to grant Defendants' Request, additional time and resources would be unnecessarily expended on a Rule 56(d) motion to ensure an adequate record is developed.

**Status of Discovery**

First and foremost, **not one deposition has been taken in this action**. Moreover, Plaintiff has two outstanding subpoenas seeking evidence critical to this case: a subpoena to GitHub to request historical information concerning the development of Defendants' code and a subpoena to Dropbox for evidence of the creation and alteration of data on the Zip File. Additionally, as discussed in Plaintiff's position in the JSL and discovery status reports, while discovery has been actively conducted, many disputes and deficiencies—including many deficiencies by **Defendants**— remain unresolved. While Defendants claim to have produced 52,000 documents, the majority of these documents are emails from mailing lists and their "**open** source" (meaning publicly available) code. **Defendants have not yet produced their proprietary source code**. It is undisputed that Defendants' proprietary source code is material evidence to Plaintiff's counts of misappropriation alleged against Defendants. See High 5 Games, LLC v. Marks, et al., No. 2:13-cv-07161 (D.N.J. Mar. 27, 2019) ECF No. 423 (ordering Defendants to produce source code in trade secret misappropriation action)); (Order, Harbor Bus. Compliance Corp. v. Firstbase.io, Inc., No. 5:23-cv-00802 (E.D. Pa. Aug. 22, 2023) ECF No. 67 (same)).

Defendants have produced a total of **six** outgoing emails, and while they have, after months of dispute, agreed to produce certain other discovery, **they have yet to produce nearly any of it.** In addition to not producing their code, Defendants have yet to produce the personal login credentials Church created to access Loop's systems; documents evidencing Church's downloading, transferring, saving, and/or storing of Loop information, including log files, metadata and substantive data reflecting the development of Defendants' product; communications with Defendants' potential and current customers, investors and referral sources; complete evidence of the creation date of **all** of Defendants' repositories; all relevant financial records; documents evidencing all persons engaged by Defendants for any service; Church's itinerary for a trip he took towards the end of his Loop employment; and identifying information for customers and contractors that Defendants generically named. Also currently outstanding is **Plaintiff's demand for forensic imaging of Defendants' devices** based upon evidence that Church—after his resignation—**cloned** Loop's source code onto his personal device and subsequently accessed it, discussed in more detail infra. Other outstanding discovery includes the deposition of Jack Milford Ford, Esq., privilege logs (which are particularly relevant due to Church's disclosure of Loop's trade secrets to Milford Ford), and **all of the ESI subject to search terms**, which is anticipated to encompass tens of thousands of documents from both parties.

---

[1] Former Fed. R. Civ. P. 56(f) became 56(d) "without substantial change" by the 2010 Amendments, effective December 1, 2010. See Fed. R. Civ. P. 56, 2010 Advisory Committee note.

Hon. Jamel K. Semper, U.S.D.J. and Hon. Cari Fais, U.S.M.J.
Page 3

**<u>Undisputed Evidence to Date Supports Plaintiff's Claims</u>**

Contrary to Defendants' fictional account of the record, the **<u>undisputed discovery</u>** adduced to date reflects the following non-fiction narrative. Church resigned from Loop the morning of September 9, 2024. That evening, Church (1) synced Loop's "uskape" GitHub code repository to his personal computer via a "fetch" command; and (2) **<u>cloned Loop's "osx-imessage" GitHub repository to his personal device or domain</u>**. In other words, he **<u>downloaded a full copy of Loop's protected, proprietary source code from Loop's private code store to his computer AFTER communicating his resignation to Loop</u>**. Notably, Church had **<u>never</u>** contributed to Loop's "osx-imessage" repository (meaning he never developed any part of the code), begging the question: why did he download it hours after resigning?

On September 11, 2024, Church incorporated TCC and registered its corresponding URL. On September 18, 2024, Church opened his cloned copy of Loop's osx-imessage repository. Around that same date, he and TCC hired a Ukrainian developer to begin design and development of TCC's competing product. Church then claims that on September 24 and 25, 2024, he created TCC's Github code repositories, but his supporting documentation consists only of the creation date of **<u>two repositories</u>**, when his open source code shows that he has **<u>other repositories he has failed to disclose</u>** in his sworn written responses and sworn "data map" that was created to show all potential sources of relevant discovery. Church also claims that during this time period, he ran searches on his devices to identify Loop data and copied the results onto a "Zip File" that he then transferred, on October 7, 2024, to a third party in violation of the DTSA.[2] The Zip File contained Loop's source code at the time of Church's resignation and other proprietary information including infrastructure, security, and marketing materials. Notably, however, an entire repository that Church was contributing to is missing from the Zip File. Church then admits to having **<u>deleted all of Loop's data</u>** from his devices, thus further destroying evidence of additional wrongdoing that would exist in the files and metadata. Church then (conveniently) claims that some time in October, his hard drive containing Loop's data failed and Church—without taking a forensic image—disposed of his hard drive. Plaintiff has also discovered that from November 2024 through present, despite sworn representations to the contrary, Church has accessed a number of Loop's systems and the proprietary data therein without authorization **<u>more than thirty times</u>** in violation of the CFAA, requiring Plaintiff to expend significant time and resources to investigate.

Defendants' Request is an attempt to divert Plaintiff's attention from prosecuting this case; to present false, incomplete information to the Court; and to prevent discovery of additional evidence that will show not only that Church misappropriated Loop's source code, but that he did so **<u>purposefully and with forethought and a plan</u>** and attempted to destroy the related evidence. For all these reasons, Defendants' Request must be denied. If, however, the Court were to grant Defendants' Request, Plaintiff respectfully requests leave to file a cross-motion. We thank Your Honors for Your time.

---

[2] In <u>Belliveau</u>, cited by Defendants, the W.D. Tex. held that any trade secret plaintiff disclosed to his attorney did not constitute disclosure under the DTA because, unlike here, it was disclosed **<u>in the course of discovery to his own attorney in connection with the on-going litigation</u>**. <u>Diamond Power</u> held that a **<u>plaintiff's</u>** disclosure of a trade secret to a person it has a confidential relationship with does not destroy a **<u>plaintiff's</u>** trade secret and <u>Wright</u> discussed same in *dicta* but is not a trade secret case. Neither case applies to a **<u>misappropriator's</u>** disclosure to a third party.

Hon. Jamel K. Semper, U.S.D.J. and Hon. Cari Fais, U.S.M.J.
Page 4

Respectfully submitted,

Debra R. Rydarowski, Esq.

cc: All counsel of record via ECF